**ADAMS et, Plaintiffs-Appellees, v. SNOUFFER et, Defendants-Appellants.**

Ohio Appeals, Second District, Franklin County.

No. 4239. Decided June 9, 1949.

Bricker, Marburger, Evatt & Barton, Columbus, for plaintiffs-appellees.

Robinson & Robinson, Columbus, for defendants-appellants.

## OPINION

By HORNBECK, J.

The appeal is noted and has proceeded as upon questions of law and fact. However, assignments of error, which are appropriate only in appeals on questions of law, have also been filed. We do not consider the assignments of error as such but many of the fourteen grounds set out in the assignments of error are made the subject of consideration and argument in the briefs of the parties. In the main, we will consider them generally, and only specifically in the few instances where required.

The judgment to which the appeal is directed is an injunction against the operation of what the trial court found to

be a nuisance in the conduct by the defendants of a stone quarry at the place described in the petition.

As the appeal is on questions of law and fact, it becomes our obligation to decide the issues de novo and to consider the testimony of the witnesses and their credibility as would a court of first instance.

In the Common Pleas Court the trial judge made separate findings of facts and conclusions of law. Appellants insist that the findings of fact are not supported and therefore the conclusions of law and the judgment are unsound. We have given close attention to the factual development because it is vital to the validity of any judgment. It is our conclusion that in all the material and controlling aspects the fourteen findings of fact are supported by the record and to that extent we reach the same conclusion as the trial judge in the Common Pleas Court. We are likewise of opinion that the facts as found sustain the conclusions of law and the judgment.

The question presented is twofold, namely, are the operations of the quarry by defendants, as conducted and to be conducted, if not restrained, a nuisance? and, if so, will the damage resulting to the plaintiffs be irreparable? That is to say, such as may not be compensated in money damages.

The first question is answered in the affirmative by the findings of fact.

It is urged by the appellants that the operation of a quarry is a public necessity. This may be conceded and if it further appeared that the product of the quarry could not be produced practically at any other location, another and different question would be presented than is found here. It neither appears that there is a scarcity of the material quarried by the defendant company nor that it is not available in other localities where it is practical to take it. The principle of law urged by defendants was not explored. Indeed objection was interposed to a question the answer to which would in probability have developed the issue. Brede v. Minn. Crushed Stone Company, 6 A. L. R. 1092.

Much of the briefs is devoted to the issue whether or not the plaintiffs suffered the injury to their properties and the inconvenience, annoyance and distress to their personal comfort in the use of their residences as contended and testified by several of them. On the one hand, the facts are developed by specific occurrences observed and noted by the plaintiffs or their witnesses. On the other, the testimony comes, in the main, from an expert and a vice president of defendant com-

pany. Manifestly, expert testimony coming from a well-qualified source, as here, arrests the attention of the triers of the facts. But when conclusions are predicated largely upon theory and they are at variance with well substantiated facts, the former must give way to the latter. This is the situation as developed.

Inasmuch as many of the operations incident to the conduct of defendant company's business were carried on after the suit was instituted and the company put on notice, it is probable that it carried on its blasting, crushing of stone, movement of trucks, creation and dissemination of dust in a careful manner and to the least inconvenience, annoyance and distress to the plaintiffs. The fact that, notwithstanding this care, the plaintiffs have been seriously distressed in their everyday living by what must be termed very normal operations of the quarry, is convincing that the condition will generally get no better and because of a purpose to greatly enlarge the operations will continue to cause plaintiffs physical discomfort and property damage.

But it is urged that even though it be found that the operation of the business is a nuisance, it does not appear that the plaintiffs may not be compensated in money for any damage that they may suffer. To bar equitable relief the remedy at law must be full and adequate. It must be as practicable and as efficient to attain the ends of justice and its prompt administration as the remedy in equity. **Salem Iron Company v. Hyland, 74 Oh St 160.** Although the mere diminution in the value of property without irreparable mischief, will not authorize the granting of an injunction, **Hassinger v. Kramer, 28 Oh Ap 449,** a court of equity will interfere by injunction to stay any proceedings which go to the immediate, or tend to the ultimate destruction of property, or which make it less valuable or comfortable for use of the occupants. Perkins v. Rogg, 11 O. D. Rep. 585.

The result of the nuisance to the normal use and enjoyment of the properties of the plaintiffs is such that they, as persons of normal sensibilities, cannot continue to live in their homes with that assurance of reasonable quiet and comfort to which they are entitled and which they would enjoy but for the invasion of their rights by the defendants. It is this disturbance of their right of normal living in the community in which they reside which has been invaded and which is not susceptible of measurement in money damages. Such situations have been frequently recognized by courts of equity and remedies accorded. Jones v. Kelly Trust Com-

pany, 18 S. W. (2d) 356; Landeman v. Lamb Construction Company, 297 S. W. 184, Stall v. Hillman, 16 O. N. P. N. S. 410; Hamilton Corp. v. Julian, et al. (Md.) 7 A. L. R. 746, Krocker v. Westmoreland Planing Mill Co. (Pa.) 23 A. L. R. 1404.

From the evidence it is established that the defendant company has opened up quarrying operations on its 134 acres of land two and one-half miles north of Dublin, which operations have a frontage of about 330 feet, extending north and south. The surface of the land was first stripped and blasting and removal of rock has been conducted so that the quarry is now about 27 feet deep. Operations were begun about July 1, 1947. The equipment consisted of a steam shovel, stone crusher, well drill, eight or ten one and one-half ton trucks. The output of the quarry is stone of varying sizes, from 5/30 of an inch up to 4 inches. It is proposed to increase the output which will require more machinery of the same kind as now on the ground. It is also intended to produce agricultural meal, a very fine limestone product. Not all of the various sizes of rock were prepared at the quarry, about 400 tons a day, the stone being trucked to another quarry for the completion of this operation. Only one big primary crusher producing rock from four inches down, with dust in it, was on the site. Preparations for blasting are made by the drilling of holes approximately six inches in diameter to the depth of approximately 27 feet. The dynamite is placed in these holes and discharged. At the time of trial there had been seven primary blasts, beginning in July and ending in December. The first of 12 holes discharged 1450 lbs. of dynamite, the second of 16 holes discharged 2100 lbs., the third of 17 holes discharged 2500 lbs., the fourth of 10 holes discharged 1350 lbs., the fifth of 10 holes discharged 1250 lbs., the sixth of 10 holes discharged 950 lbs., and the seventh of 18 holes discharging 3450 lbs. of dynamite. Numerous other secondary discharges were also made. The quarry was in operation every weekday from about 6:30 in the morning until 5:00 o'clock in the afternoon. Plaintiffs' residences were at varying distances from the quarry, the most remote about a mile away. The nearest was Frambes, 610 feet. This was on the east side of the Scioto River. The quarry was on the west side. All of the operations were for the greater part of the year in full view from the homes of these plaintiffs. Plaintiffs acquired and held their lands with no notice of any purpose of defendant to locate and operate a quarry where placed until a short time before the institution of this suit. The blasts produced by the discharge of the dynamite produced marked concussion in the residences of several of the plain-

tiffs, causing windows to rattle, shaking mirrors and pictures on the walls, and felt personally, causing plaster to crack and to fall from the ceiling of one of the homes, a roof to leak in another, frightening a child in each of two of the families, one of a plaintiff, the other of a witness, not a party, who lived more than a thousand feet from the quarry, interfering with the sleep and rest of some of the parties and preventing conversation in a normal tone of voice. The uncertainty as to the time when the blasting might be expected added to the uneasiness and distress which followed the actual discharges. The moving and grinding of trucks in low gear up a 10% grade, the continuous drilling of holes in the rock when blasting was to be done, the detonation of the dynamite and the crushing of the stone is noisome and disturbing. A fine dust was produced by some of the operations, probably the crushing of the stone, which was deposited in considerable quantity about the premises and over the furniture and woodwork of the homes of the plaintiffs.

In Hamilton Corporation v. Julian, et al. (Md.) 7 A. L. R. 746, the court supported the overruling of a demurrer to a petition seeking an injunction against the proposed erection of a bowling alley and a picture show in a residential district adjoining the residences of plaintiffs. At page 749, the Judge writing the opinion said:

"The real question in all such cases, as stated by the authorities, is whether the nuisance complained of will or does produce such a condition of things as, in the judgment of reasonable men, is actually productive of actual physical discomfort to persons of ordinary sensibilities and of ordinary tastes and habits, and as, in view of the circumstances of the case, is unreasonable and in derogation of the rights of the party."

This principle is carried into the syllabus. We believe it to be a fair test here, which applied to the facts developed supports the granting of the injunction.

In Krocker v. Westmoreland Planing Mill Company, (Pa.) 23 A. L. R. 1404, an injunction was granted in favor of plaintiffs living in a residential neighborhood against the operation of a saw and planing mill because of excessive noise, manner in which a large amount of lumber was dropped from wagons or unloaded, shavings, sawdust and smoke from the mill, seriously interfering with plaintiffs and their families in the comfort and enjoyment of their homes.

An injunction was granted against the operation of an amusement park in Edmunds v. Duff, et al., (Pa.) 33 A. L. R. 719, because enjoyment of plaintiffs' homes would be interfered with by noises, attraction of large crowds or the operation of a business or industry tending to render the immediate community a less desirable place in which to live. It was, there said that one may not commit acts on his own premises calculated to interfere with the reasonable enjoyment of others of their homes.

The plaintiffs proceed upon the theory that their homes are in a residential section and therefore the relief sought is peculiarly applicable. It is the contention of the appellants that the section involved is not residential but open country. They point to the fact that the residences are widely separated, some are of little value; that the terrain in the vicinity of the properties involved is rough and rocky and, in all, the presence of the quarry, because of these physical conditions, and particularly because of its distance from the homes of the plaintiffs, is not a nuisance. It is true that the district in which plaintiffs' homes are located is not closely built up but the parcels of land in which they live have been and are used exclusively for residential purposes. The section involved may be designated as the highest type of exclusive residential territory. Manifestly, it is a modern development where those who can afford it and care for that manner of living move where they may have spacious grounds upon which their homes are built and the opportunity for rustic environment where in part, at least, natural beauty is found in a somewhat wild and uncultivated state.

Appellants cite, comment and rely upon **Antonik v. Chamberlain, 81 Oh Ap 465.** In this case the court refused to grant an injunction against defendants' use of their premises as a privately owned airport. The plaintiffs' claim was "that the operation of an airport upon defendants' property would create a nuisance to all of the plaintiffs, and would further result necessarily in repeated trespasses upon plaintiffs' properties by airplanes using defendants' property. * * * That by reason of the nuisance and trespasses the plaintiffs would be seriously interfered with in the peaceful enjoyment of their homes, and that the value of their properties would be substantially impaired and they would suffer irreparable injury". At the outset the court commented on the fact that the evidence as shown there, as distinguished from that developed in the Common Pleas Court, was that the new plan of defendant would almost, if not entirely, eliminate flying over

the building of parties-plaintiffs. The defendants owned 450 acres of vacant land west of the corporation limits of the city of Akron, which land was unrestricted and unzoned. The court rested its opinion, in part, upon the great concern to the public if the contemplated airport was abated or its establishment prevented and whether or not the use contemplated was reasonable under all the circumstances and concluded that there was not an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort and not merely a tendency to injure. In other words, the court at least leaned to the concept that much of the anticipated injuries resulting to the plaintiffs was fanciful rather than real. The distinction is manifest between this and the cited case upon the determinative issue of the actual, material, physical discomfort suffered by the respective plaintiffs. As early as **Goodall v. Crofton, 33 Oh St 271,** an injunction suit, the court directed attention to the axiom that each case is determined on its own facts.

It would serve no good purpose to discuss the many factual issues as well as legal questions well considered in the briefs of the parties. It is urged that a motion and a demurrer to the petition should be sustained. We hold otherwise.

It is urged by the appellants that although there are thirteen parties-plaintiff, but three testified and that, inasmuch as they did not take the stand to urge their own cause, they should not be granted relief. Of course, this does not follow if the proof is forthcoming as to their cause of action from any source. Mr. Scott Van Etten, husband of a plaintiff, who testified that his home was 2600 feet north of the quarry, which distance is somewhat greater than that, probably 2745 feet, also testified that the noise and excessive vibrations from the 25 or 30 blasts that he had heard were startling and annoyed him greatly. Beyond this distance, the record is silent as to any injurious effects caused by the operation of the quarry. As to those plaintiffs who live at a greater distance than 2745 feet, there is no proof either of facts supporting injunctive relief or that annoyance, if any, suffered by them is not compensable in money damages. We, therefore, hold that as to those plaintiffs at a greater distance than 2745 feet from the quarry injunctive relief should not be granted, not because they did not testify but because the proof is not forthcoming from any source to support such relief. The plaintiffs who come under this classification are Ray E. Cochran, Ward B. Perley, Pearl B. Morton and Andre Gelpi.

The judgment in this court will be for the plaintiffs other than those who live at a greater distance than 2745 feet from the quarry, as prayed in the petition and supplemental petition.

MILLER, PJ, and WISEMAN, J, concur.