STATE, ex HECK, Pros. Atty., Plaintiff, v. GRILLOT et, Defendants.

Common Pleas Court, Montgomery County.

No. 108508.   Decided August 1, 1955.

Mathias H. Heck, Prosecuting Attorney, by John P. McHugh, Assistant Prosecuting Attorney, Dayton, for plaintiff.

Charles P. Pfarrer, and Horace J. Boesch, Dayton, for defendants.

## OPINION

By McBRIDE, J.:

This case is pending on the application of the State of Ohio for a **temporary** order to enjoin the defendants, owners and operators of the South Dayton Dump, from using the premises for the accumulation, open burning and unsanitary disposition of public garbage, refuse and industrial wastes for the reason that said private business operation constitutes a public nuisance and endangers the lives, health and property of the community.[1]   Twenty witnesses were heard and the matter submitted on the testimony and oral arguments.

The testimony is undisputed that the South Dayton Dump receives and burns approximately half of the non-segregated garbage and household trash privately collected in the City of Kettering, all of the household trash from the municipal collections of the City of Oakwood, and most of the industrial and commercial wastes created within the City of Dayton and Montgomery County.

The operation at the dump includes the burning of customary in-

---

1. This action was one of a series of such cases instituted against operators of burning dumps in Montgomery County, Ohio.   Initially they were filed in the name of the State of Ohio, ex rel. Dr. Pansing as Health Commissioner under authority of the case of State, ex rel. Pansing v. Lightner, 32 O. N. P. (NS) 376, however, subsequent cases were all filed on relation of the county prosecutor pursuant to §§3767.03 and 3767.13 R. C., formerly §§6212-3 and 12646 GC.   Nine such actions have been filed.   Three voluntarily closed, two, including this case, were tried on the application for a temporary order, and four agreed to temporary or permanent orders.

dustrial and builders wastes, metals, paints, cans, furniture, rubber, old tires and similar articles of every description which produce sharp, obnoxious and aggravating odors, fly and burning ashes, and smoke which is carried by the prevailing winds usually into residential and other areas in the City of Dayton. The extent of the defendants' operation is apparent from their estimate that they dispose of approximately three-fourths of a million cubic yards of materials per year, only ten per cent of which is solids used for filling rather than burning.

The defendants conceded in testimony and argument that the South Broadway Dump constituted a public nuisance prior to their taking over its operation about five years ago.

The court observes that the defendants have improved the physical appearance and usefulness of the area in front of the dump and have adopted a plan of rotating dumping and surface burning so that through the constant daily and multiple burning larger infrequent conflagrations are avoided. These efforts improved physical appearances without effecting any improvement over the ancient but offensive and unsanitary method of open burning disposal. No scientific improvement or modern disposal method has been adopted. The large increase in volume disposed of through burning in recent years as a result of residential and industrial expansion has extended the injurious effects of the smoke, odors and other incidents of a burning dump in spite of defendants' more frequent burning.

The defendants' distinction between the prior admitted nuisance operation and existing conditions is without any substantial difference.

It is sufficient to note here that this court, as early as 1934, held that the dumping of garbage, even without burning, by the City of Dayton, constituted a nuisance. Pansing v. Lightner 32 ONP (NS) 376. A collection of garbage and similar putrescent material is a nuisance per se when accompanied by open dumping or unsanitary disposal. Accumulated in quantities along with burnable and non-burnable general household rubbish, the mixture is equally a nuisance when disposed of in an open fire. A dump, non-putrescent refuse and smoke are not nuisances per se, but when accompanied by constant burning, obnoxious burning odors and rats, particularly near a populated area, the operation of a burning dump is a public nuisance, irrespective of the existence of other nuisances in the area. In this respect the large, unsanitary garbage pit or fill operated by the City of Dayton without cover equally appears to be a public nuisance.

The systematic burning of certain industrial waste has also been declared to be a nuisance. **Kepler v. Industrial Disposal Company, 84 Oh Ap 80, 39 OO 11.** While the defendants have partially endeavored to reduce the garbage and odor producing industrial wastes, such as rubber, metals and the like, the record indicates that they are present in substantial quantities and ignited six days a week.

This court has for many years found nuisances to exist in the indifferent and unsanitary public and private disposal methods practiced in this county. The basic solution of the problem is still neglected. It is argued that in spite of the nuisance the services of the privately operated South Dayton Dump are so essential that its closing should not be order-

ed. Followed to its logical conclusion, this argument would justify the sacrifice of private and public rights and renunciation of the law and the function of the court.

The court finds that the State of Ohio has clearly established that the systematic dumping and burning of huge quantities of garbage, refuse and industrial wastes on the premises produces noxious, obnoxious and offensive smells, odors, fly and burning ash, smoke, and harbors rats, all of which is injurious to the health, comfort and property of the community, and that this unsanitary condition constitutes a public nuisance; that great, irreparable public injury will result unless a temporary order is issued as urged by the plaintiff and by the Montgomery County Health Comissioner.

The court has recently experimented with restricted operation of dumps. Restrictions protect and encourage the nuisance and create constant contempts by individuals unwilling or unable to meet the public problem. Failure of the County Health Department to adopt general regulations or any other public authority to provide strict controls is another factor that makes restricted operation of burning by court order an impossibity in unsupervised disposal areas.[2]

## ORDER

IT IS THEREFORE ORDERED BY THE COURT that a temporary injunction be, and the same is hereby granted restraining the defendants, and each of them, from depositing, or permitting others to deposit, dump or burn garbage, refuse, industrial and other wastes upon the premises involved herein after Wednesday, August 31st, 1955. Those portions of the premises heretofore used for dumping or burning shall remain fenced and treated daily continuously for two weeks with an adequate supply of rat poison and completely covered with earth.

It is further provided, however, that after August 31st, 1955, garbage, refuse and industrial wastes and other materials may be BURIED on the premises on the following conditions:

(1) All such materials must be completely covered daily and at the end of each day's operation;

(2) Such operations must be carried on without any burning on the premises;

(3) All materials must be buried according to the trench or cell method of sanitary landfill as approved by State and Federal Public Health authorities, or according to any other general regulations adopted by the Montgomery County Board of Health or other lawful authorities.

## PURPOSE AND MODIFICATIONS

It is the purpose of the court to permit the defendants to continue without restrictions until September 1st, 1955, after which time the burning of garbage and household refuse from every source is prohibited. Thirty days is a reasonable time within which to require the defendants to convert to a sanitary landfill for disposal of garbage and household

---

2. Restrictions imposed in earlier cases included regulation of time, days and method of burning, rat extermination, prohibition against shooting rats, material and fire control and the like.

refuse, or, in the alternative, to enable private haulers and disposal operators to meet the problem.[3]

It is also the purpose of the court, **if strict public or private supervision can be obtained,** to thereafter permit the defendants to continue to burn industrial and builders wastes until November 1st, 1955.[4]

Provision may thus be made to give priority to the urgent problem of disposal of public garbage and refuse prior to meeting the problem of disposal of industrial wastes.

Therefore, it is provided further, that because of the "immediate emergency," as described by Dr. Pansing, now existing as a result of the increase in residential and industrial construction; and the proportionate increase in garbage, refuse and waste burning in recent years, and because forthwith execution of this order may precipitate a serious crisis, the court will consult with public officials and the parties for the purpose of securing temporary strict supervision which will insure performance of this order and also the possibility of future modifications of this order for the purpose of permitting:

(a) for a period until November 1st, 1955, the burning at the South Dayton Dump of materials **other than** garbage and household refuse.

(b) for an indefinite period, the use of a pit fill or modified land cover in lieu of a sanitary landfill for household refuse, other than garbage, if strictly separated at the source. This involves only the separated refuse, other than garbage, from Oakwood, which the testimony reveals is not strictly separated as required;

(c) for an indefinite period the supervised burning in separate areas of brush, trees and wood, but not paper, after inspection and approval of the material involved. Since all residential garbage is wrapped in paper in this community, it would be dangerous to permit the promiscuous burning of paper, especially near landfill operations.

---

3. Operators involved in earlier cases were given four and five months within which to convert. For economic reasons the same conversion date was ordered for all operators involved.

4. The City Manager of Dayton testified that, if the South Dayton Dump were closed and it became necessary, the City of Dayton would within ninety days accept and dispose of all industrial waste created in the city and that such materials would be disposed of without open burning, probably by landfill rather than incineration.

To carry out this modification the county commissioners authorized employment of an additional deputy sheriff for the purpose of enforcing the modifications of this order until November 1, 1955 and the commissioners authorized a nuisance inspector under the statute to enforce the other provisions of this and other orders issued by the court.