**DALE et, Plaintiffs, v. BRYANT, Jr. et, Defendants.**

Common Pleas Court, Montgomery County.

No. 110967. Decided March 22, 1957.

Curtner, Brenton & O'Hara, By J. Paul Brenton, Dayton, for plaintiffs.
Harold B. LeCrone, Dayton, for defendants.

## OPINION

By McBRIDE, J.:

This case was heard and submitted on an application for a permanent restraining order. The defendants include the owner of the land and the operator of an automobile salvage business which regularly burns vehicles in the open. By agreement, the City Auto Sales, Incorporated, was substituted as defendant for David Barrar.

As appears on Exhibit 1 and from the inspection by the court the area involved includes a "U" shaped plat which, while it has no zoning or restrictions, has been and is used exclusively for residence purposes by several hundred individuals. The only permanent exception is one community grocery store. The north central portion inside the "U" does not appear to be a part of the plat. This portion includes several residences on larger tracts, a narrow open field to the highway and a seven acre tract located in the center of the entire area. It is upon this seven acres that the defendant, John Bryant, commenced his salvage business. The plat itself appears to be rather old. It consists of lots so small that many owners have more than one. The streets are unimproved and some incomplete. There are no side walks, some outside toilets, local water supply and relatively inexpensive housing. However, as indicated, the area is entirely devoted to residential use with the exception of the community store and one or two temporary variations which no longer exist.

The seven acre parcel in the center of this community was used for agricultural purposes until early 1956. At that time used automobiles were moved in for storage. About the middle of October 1956 the defendant, John Bryant, leased the land from City Auto Sales, Incorporated, on a month to month basis for the purpose of carrying on the business of salvaging the metal from automobiles by means of the open burning process. Complaints immediately arose and this suit was filed within approximately sixty days after the defendant commenced his operation.

It appears that, at least in this instance, salvage operations are divided into two functions. The first consists of the storage and stripping of parts for sale with no or only incidental burning. The second consists exclusively of burning, mostly of stripped cars, with only incidental salvaging of a few readily salable parts. The defendant, John Bryant, undertook the latter phase of this salvage program, anticipating a change in his operation as his capital improved. Storage of cars and parts is not a significant item.

The defendant admitted that he burns off about twenty cars a week, usually two or more at the same time. He and the owner of the land agreed to avoid burning on Mondays because of its effect on clothing hung out to dry. This burning off of paint, oil, upholstery, mats, rubber

tubing and the like is an essential step for salvaging metal for future industrial use.

When the process is conducted in the open without modern equipment bellows of smoke, flying particles, lacy fragments of burnt paint and offensive and unnatural odors are produced and distributed over the surrounding area at the will of the wind and the whim of atmospheric pressure. The burning witnessed by the court and described by neighbors on the witness stand with details as to soiled wash, smoke, and soot deposits on homes, offensive and noxious odors that lingered after the smoke disappeared clearly establish a continuing nuisance in the heart of a residential community.

The area of the effective nuisance is limited and cannot be compared to that of the huge burning garbage dumps which formerly enveloped portions of this county. However the area of effective nuisance is not confined to the seven acres and it does produce damage to real and personal property surrounding the operation and it does cause substantial physical discomfort to the ordinary person, hundreds of whom have resided in their own homes in this area for a period of time long before the salvage operation commenced.

The operation of a business which salvages used cars and parts in an open lot or other area is a junk yard and is not a nuisance per se. The mere storage of automobiles upon the premises does not invade the rights of adjoining owners. Unsightliness of a junk yard does not violate rights of neighbors any more than an unsightly house or other building. **Bohley v. Crofoot, 7 Abs 667.** A court of equity will not control another in the lawful use of his premises when he does not violate the rights of others. **30 O. Jur. 344.**

The nature and definition of private and public nuisances is so well established by the cases and so thoroughly briefed by counsel that repetition is unnecessary here. The court will therefore confine its discussion to the more significant phases of the subject involved in this case: the burning of automobiles for salvage and the initiation of such an activity in an established residential area.

Nuisance is a relative matter which must be determined by its character and magnitude in connection with all of the surrounding circumstances in the same area. A junk yard in a neighborhood given over to maufacturing enterprises is not a nuisance. However where such a business is operated on a large scale in an exclusively residential neighborhood with incessant noise and dirt it is a nuisance. **Weishahn v. Kemper, 32 Oh Ap 313,** 167 N. E. 468, motion to certify overruled. An injunction will issue at the suit of residents of long standing in an otherwise quiet residential neighborhood to restrain a motor express company from operating a very noisy business during certain hours of the night. **McCambridge v. Mahoning Express Company (App) 17 Abs 632;** Schlueter v. Billingheimer, 14 W. L. B. 224. An injunction will not issue to prevent the raising of ducks, in a farm area, of several hundred unavoidably noisy ducks, which could be heard by the plaintiff in her home four hundred feet away. **De Albert v. Novak, 3 O. O. 425, 78 Oh Ap 80.** An

injunction has been allowed on one lot operated as a junk yard, but denied on another two hundred feet away because the latter was almost surrounded by buildings devoted to manufacturing purposes. Grundstein v. Ashland, 25 O. N. P. (N. S.) 493. It is error to reject evidence and special instructions of law concerning the nature of the business and the character of the neighborhood. **Eller v. Koehler, 68 Oh St 51.**

Where the business of salvaging used automobiles and parts includes the open burning of cars for the purpose of removing paint, enamel, upholstery and rubber parts and creates obnoxious and offensive gases, odors, smoke, and flying foreign substances, which pass over and upon adjoining residences, the rights of the neighboring home owners are invaded. The owner or operator of such a business will be enjoined. **State, ex rel., v. Grillot, 71 Abs 329.** While this court has recognized the continuing need for proper facilities in this community, nevertheless new activities of this nature may not be initiated in established residential areas. The rule as to a fit and suitable area for such activities, discussed by the Supreme Court in 1903, is equally applicable today.

"Whether it be a case of injury to real property, or a case of personal annoyance or inconvenience, or of interference with the comfortable enjoyment of one's property, or whether the question be as to the existence of a nuisance, or as to the extent of the alleged injury, or as to whether the defendant's act caused the injury, and though the inquiry be before a chancellor or a jury, the contiguity of the alleged nuisance to the plaintiff's property and the nature of the vicinage is always a pertinent circumstance to be considered. The matter of locality may be of much or little weight in arriving at a conclusion, nevertheless the parties have the right to have the controversy heard and determined with all the light that locality may throw upon it. The mutual interests of urban populations require this. For example, if one unnecessarily erects, maintains and operates a noisy, smoky machine shop, or rolling mill, in the midst of a section of a city or town already wholly given up to residences, possibly many of them of elaborate design and great cost, there would be less excuse for the offender in so using his own property, than if he had chosen a place which had been wholly or in part given up to trade and manufactures. All that can be required of men who engage in lawful business is that they shall regard the fitness of locality In the residence sections of a city, business of no kind is desirable or welcome. On the other hand one who becomes a resident of a trading or manufacturing neighborhood, or who remains while in the march of events a residence district gradually becomes a trading or manufacturing neighborhood, should be held bound to submit to ordinary annoyances, discomforts and injuries which are fairly incidental to the reasonable and general conduct of such business in his chosen neighborhood. The true rule would be that any discomfort or injury beyond this would be actionable; anything up to that point would not be actionable." **Eller v. Koehler, 68 Oh St 56.**

A situation similar to that of the instant case appears in **Bohley v. Crofoot, 7 Abs 667.** The plaintiff owned and occupied his residence prior

to the acquisition and use by the defendant of an adjoining lot in the village of Medina. The defendant in the operation of his business of wrecking automobiles upon his property caused gases, noises, odors and smoke, which passed upon and over the premises of the plaintiff and injured him in the quiet and peaceable use and enjoyment of his premises. The court of appeals held that such conduct was an invasion of the rights of the plaintiff and granted an injunction. The defendant violated the order and was found guilty of contempt. **Williams v. Bohley, 8 Abs 355.**

Ohio cases support the right of an adjoining owner to recover damages and, if the injury is irreparable, to obtain equitable relief where his rights are disturbed by smoke, odors and dirt created by a neighbor. **Fry v. Queen City Paper Co., 34 O. O. 454, 46 Abs 249, 79 Oh Ap 64, 66 N. E. 2d 252; Kepler v. Industrial Disposal Co., 84 Oh Ap 80, 39 O. O. 111, 85 N. E. 2d 308; McLung v. North Bend Coal & Coke Co., 9 C. C. 259, 6 C. D. 243; Graham & Wagner, Inc., v. Ridge, 41 Oh Ap 288, 179 N. E. 693; 30 O. Jur. 354.** Relief by way of abatement may also be granted under certain circumstances against an established industry located in what is designated an industrial district. **Antol et al, v. Dayton Malleable Iron Company (App), 30 Abs 312.**

Burning of materials which regularly produce smoke, obnoxious odors, and flying foreign substances may be enjoined where it produces a substantial annoyance, actual physical discomfort, or property damage, even though there may be no actual personal injury or sickness in the medical sense. The plaintiff is not required to establish that he is suffering some ailment or disease, nor is it necessary that he be forced to abandon his home. **Eller v. Koehler, 68 Oh St 51; Kepler et al, v. Industrial Disposal Co., 84 Oh Ap 80, 39 O. O. 111, 85 N. E. 2d, 308; Adams v. Snouffer (App) 55 Abs 14, 87 N. E. (2d) 484; 30 O. Jur. 386.** It has been held error to sustain the defendant's demurrer to the evidence at the close of the plaintiff's case where the evidence tends to show damages by way of physical discomfort to the plaintiff in the use of his premises. **Frey v. The Queen City Paper Co. (2nd Dist.), 79 Oh Ap 64, 34 O. O. 454, 46 Abs 248, 66 N. E. 2d 252.**

It is true that the value and nature of residence properties is an element that may be considered however in cases of this nature it is more significant that the area is exclusively residential in character and the owners and occupiers of the property are persons of ordinary sensibilities and are entitled to the use and enjoyment of their respective homes without interference from an unreasonable use.

The defendants argue that a necessity exists in this county for the disposal of an increasing volume of automobiles; that the court should impose regulations which would answer the need and protect the plaintiffs as was done in the case of public garbage and refuse. **State v. Grillot, 128 N. E. 2d 552, 930; 71 Abs 164, 329.** The power of a court to enjoin or modify common law nuisances which interfere with the rights of others is inherent in a court of general jurisdiction. This equitable power to impose conditions for modification, rather than abatement, of individual nuisances should not be confused with the primary legisla-

tive right to regulate the same subject. Courts may modify a common law nuisance where modification is adequate to eliminate the nuisance or where a clear and immediate public necessity requires a compromise between conflicting individual rights.

Under the conditions found in the instant case modification will not eliminate the nuisance without destroying the objective. Further, there is no clear and immediate public necessity for the disposal of used cars, especially by one whose activity did not exist several months ago. The modification or alternate method of landfill, imposed by the court as a substitute for burning garbage dumps, is impractical where the objective is the salvaging of metal.

It is also argued that there are others burning and salvaging automobiles in the section west of Dayton. The area of effective nuisance in this type of burning is limited. The existence of other similar activities outside this limited area is not a defense and is not material in the instant case.

The court finds that the operation of this new salvage business in the center of an established residential community in the county creates an actionable nuisance of a serious, substantial and permanent nature, incapable of being compensated by damages and that equitable relief by way of an injunction is the only adequate remedy available.

A permanent order is granted at defendants' costs, restraining the defendants, John Bryant, Jr. and City Auto Sales, Incorporated, from burning any used cars and parts on the premises and from causing smoke, offensive odors, dirt and flying foreign substances to pass over and upon other residences in the community.

An entry will be prepared accordingly.