HENN et, Plaintiffs, v. UNIVERSAL ATLAS CEMENT COMPANY et, Defendants.
BOARD OF TRUSTEES OF WAYNE TOWNSHIP et, Plaintiffs, v. UNIVERSAL ATLAS CEMENT COMPANY et, Defendants.

Common Pleas Court, Montgomery County.

Nos. 112209, 112210.   Decided August 23, 1957.

440

Mason Douglass, John P. Naas, John T. Shanks, for plaintiffs.
Pickrel, Schaeffer & Ebeling, for defendant.

## OPINION

By McBRIDE, J.:

Two motions for temporary restraining orders requiring the defendant, Universal Atlas Cement Company, to cease quarrying in Wayne Township were submitted to the court on the evidence, arguments and lengthy briefs.

These cases are based upon two separate causes of action: first, by way of a request for a declaratory judgment the plaintiffs ask the question as to whether the defendant may proceed with quarrying of land prior to the election of November 5th, 1957; second, that the quarrying, if not illegal, is or will become a common law nuisance. The first issue raises the legal question as to whether the zoning plan has any effect during the interim period between its adoption by the trustees on July 22, 1957 and its approval or rejection by the voters on November 5th, 1957. The second issue raises the question of law and fact as to whether a common law nuisance exists, or should be enjoined because it may exist in the future. Since the plaintiffs request a temporary order it is essential that the rights alleged be sufficiently established at this time to justify a restraining order.

### INTERIM ZONING IN LAW

"Before availing itself of the powers" (§519.03 R. C.), of regulating zoning the board of township trustees are required to follow a detailed initiating procedure before finally submitting the issue to the voters. Secs. 519.02 to 519.25 R. C.

Sec. 519.11 R. C., provides that

". . . No zoning regulations shall be put into effect unless a majority of the votes cast on the issue is in favor of the proposed plan of zoning. Upon certification by the board of elections the resolution shall take immediate effect, if the plan was so approved."

Township zoning has no effect unless the vote cast is in favor of the plan and even then the effective date is postponed until the official certification by the board of elections. There is no argument or authority that will support the effectiveness of initial township zoning resolutions by the trustees other than for the purpose of obtaining the will of the people. Until a favorable vote is cast and certified zoning resolutions are legally incomplete and unenforceable. There is no such thing as "interim zoning" by the trustees either by the adoption of the resolution of intent to proceed or by the adoption of a zoning plan for submission to the voters. We are not here concerned with the authority of municipalities under home rule powers to enact so called "stop gap" ordinances prior to zoning.

The reason behind the statutory conditions is obvious. Neither the township nor its trustees are invested with general powers of a corporation. The trustees can exercise only those powers conferred by statute, or such others as are necessarily implied from those granted in order to enable them to perform the duties imposed upon them. **Trustees v. Minor, 26 Oh St 452.**

Interim zoning would be retroactive and illegal in any event. The right of an owner to use and to continue to use his property in a lawful manner is protected by the constitutional provisions that no person

shall be deprived of life, liberty, or property without due process of law. City of Akron v. Chapman, 160 Oh St 382, 52 O. O. 242; State v. Pierce, 164 Oh St 482, 58 O. O. 325; State, ex rel. Fairmont Center, v. Arnold, 138 Oh St 259, 20 O. O. 339; Reilly v. Conti, 93 Oh Ap 188, 50 O. O. 415.

The legislature has provided the method whereby the people express their decision respecting limitations upon the use of property. All political power is inherent in the people who have reserved the right to alter, reform, or even abolish their form of government. Article I, Section 2. Until a majority of the people approve a zoning plan no owner may be deprived of his right to use his property. Efforts of public officials, citizens groups, or individuals to deny this constitutional right for any purpose must be examined with considerable caution. 21 O. Jur., 1007.

The plaintiffs argue in their reply brief that the use of the word "enactment" in §519.19 R. C., refers to the time of the adoption of the zoning plan by the board of trustees rather than the effective date of the plan as provided in §519.11 R. C., and therefore that non-conforming uses must be in existence before July 22, 1957, a date over ninety days prior to the submission to the electors. As previously indicated, such a construction would be unconstitutional. It is competent for the legislature to enact a law the enforcement or execution of which is postponed until a favorable vote. After such vote the board of trustees acquire such authority as is granted by the statutes and thereafter the expression relied upon is operative and constitutional. It is a general rule of construction that courts must construe applicable statutes together and give to them an interpretation that is constitutional.

The court acknowledges receipt of a memorandum supplementing the reply brief of the plaintiffs. This memorandum is devoted exclusively to the effect of §519.19 R. C., which permits the lawful use of any land as existing and lawful at the time of "enactment" of a "zoning resolution" or amendment. The trustees did adopt, or enact "the zoning plan" by resolution in July and to this extent the local legislative effort was complete except for the approval of the voters, which event—when certified—determines the effective date or enforceability of the plan. The arguments of counsel are of first impression and as is so frequently the case in constitutional construction very finely drawn. Without repeating them at length at this time it is apparent that plaintiffs' construction: (a) results in an effective date for §519.19 R. C., prior to the time expressly fixed by §519.11 R. C., for the zoning plan itself; and (b) fails to distinguish between the resolution adopting "the zoning plan" and directing submission to the voters and "zoning resolutions" under §519.02 R. C., which the board may enact in its operation after approval without further consent of the voters. The position of the sections in the chapter may be relied upon to support the distinction between the resolutions required to initiate the plan, which are separately described and controlled by §519.11 R. C., and the frequent, individual "zoning resolutions" after the plan is approved and in operation, which are expressly controlled by §519.19 R. C. Sec. 519.03 R. C., defines "a resolution declaring its INTENTION TO PROCEED" and §519.04 through §519.10 R. C., refer to the adoption of the specific "zoning plan" and the "adoption of THE zoning resolution" by the trustees. After the plan is in

operation and in association with other operating provisions §519.19 R. C., refers generally to "a zoning resolution or amendment." The statutes further distinguish the original legislative efforts of the trustees from their acts after the plan has been approved by use of the word adoption for the one and enactment for the other. The purpose and intent of the General Assembly is clear: the zoning plan has no effect until its approval is certified by the board of elections; individual operating resolutions and amendments subsequently adopted shall not disturb lawful uses existing at the time such additional resolutions are enacted.

The statute defines its terms when referring to three different kinds of resolutions. The plaintiff confuses these terms and avoids the limitations upon subject matter in the respective sections.

In any event, and assuming this court may be mistaken, the plaintiffs' argument leads to either retroactive effects or to complete unconstitutionality, neither of which supports the relief requested.

Further, the argument is of such a nature that it should be passed upon on the merits or by appropriate action on the pleadings before any attempt is made to enforce it by way of preliminary action. If the plaintiffs have faith in their argument the rights were fixed last July and therefore defendants are not now creating potential non-conforming uses as alleged and argued, but are performing illegal acts which may be permanently enjoined only when the plan is legally enforceable. The court reaches this unique conclusion only as a result of accepting the plaintiffs' theory.

On the question proposed in the action for declaratory judgment it is the conclusion of the court that the township trustees do not have the authority to regulate or enforce zoning until a favorable vote on the plan is certified by the board of elections.

### INTERIM ZONING IN EQUITY

Counsel for the plaintiffs conceded in argument that the trustees are unable at this time to enforce the zoning plan and appealed to this court in equity to deprive the defendants of their constitutional rights because the defendants are currently establishing uses which will not conform to the plan when and if zoning is approved.

The situation in Wayne Township is accurately described by counsel as a race. This race is between two factions to restrict or to otherwise determine the future use of land either by zoning or by pre-existing uses. This township is in a political-economic contest encouraged by rejection of the first zoning resolution and precipitated by submission to the voters of the second resolution. The proponents of zoning seek to enjoin a present use before the zoning resolution is approved. The defendants assert their constitutional rights to lawfully use property and determine its future use within existing law. Allowance of a temporary order would be a deciding factor in determining this phase of a question which by law is reserved to the people. This court is in effect requested to determine such issue if only for an interim period by giving prospective effect to an unenforceable law.

The trustees and proponents of zoning seek by judicial intervention to restrain the defendants from exercising present legal rights until zoning is approved and until the owners lose the opportunity to estab-

lish uses which will be denied them if zoning is approved. The plaintiffs seek to remove the defendants as a factor in this race by the use of a temporary order which is discretionary with the court.

In such a contest the proper function of the court is limited. It is the duty of the court to insure the integrity of a fair election. It is equally the duty of the court to guarantee all individual rights. The court may never lend its power to favor either side of a zoning battle to predetermine rights or to enforce anticipated regulations contrary to existing law. A similar although extreme example would exist if public officials sought the authority of the court to spend tax money before the voters approved a tax levy.

Under the circumstances existing in. this case a temporary order would not insure a free election but would disturb the status quo and the existing balance of individual rights and permanently injure one faction by disqualifying it from the current economic and political race. To thus disturb the status quo as it exists with its accompanying constitutional rights would be serious error. To interfere in the conduct and normal effect of the election or to advance the statutory date of the adoption of the, resolution, if it be adopted, would violate the fundamental concept of government which requires courts to abstain from legislative, executive, and political functions.

What may be beneficial or detrimental to good community planning is a political, not a justiciable issue. The benefits of zoning must be won at the polls, not in the courtroom. They cannot be gained by judicial fiat without a serious abuse of judicial discretion. It is equally true that if the voters made a mistake in defeating zoning the court may not rescue them from the consequences, irrespective of the personal opinions of the court.

It is the conclusion of the court that equity may not temporarily stay the creation of uses even though such uses will be non-conforming in event zoning is subsequently approved at the township election. It is elementary that equity respects the law and unhesitatingly follows the constitution.

## NUISANCE

The second cause of action is based upon a common law nuisance. The pleadings on their face indicate that many of the complaints do not now in fact exist but are merely anticipated. The future time is repeated ten times in one petition and still more frequently in the second. The plaintiffs allege that defendant's operation of a quarry or quarries will affect and will constitute a nuisance. The plaintiffs have also combined in the pleadings arguments on behalf of zoning as well as evils anticipated in event the business is not properly conducted. The testimony is equally intermingled with the apprehensions, fears, and opinions of the witnesses with respect to the future general welfare of the community.

It is true that the welfare of a community is one of the conditions which a court may consider in determining whether a specific activity is a nuisance under the individual circumstances. However general welfare is an extensive field in which all three functions of government participate, guided by the directions of the people themselves. Each func-

tion of government must consider and apply the general welfare doctrine within its own respective limitations.

This court has frequently considered the subject of nuisance. **State v. Grillot, 71 Abs 170, 128 N. E. 2d 552, 71 Abs 329.** Only recently it enjoined a nuisance which settled within a small residential community in an unincorporated area of the county. **Dale v. Bryant, 75 Abs 401, 141 N. E. 2d 504.** In the instant case the activity has moved into an agricultural area, not into a residential community. The petition admits that the area involved is an agricultural community. Nuisance is a relative matter and what may be legally objectionable in one location is not in another. All that can be required of men who engage in lawful business is that they shall regard the fitness of locality. In the residence sections of a city, business of no kind is desirable or welcome. On the other hand one who becomes a resident of a trading or manufacturing neighborhood, or who remains while in the march of events a residence district gradually changes its complexion, should be held bound to submit to the ordinary annoyances, discomforts, and injuries which are fairly incidental to the reasonable and general conduct of such business in his chosen neighborhood. This court is unable to improve this expression of the Supreme Court in **Eller v. Koehler, 68 Oh St 56, 67 N. E. 91.** The significance of the relative balance of the use of property is demonstrated in **Adams v. Snouffer, 88 Oh Ap 79, 44 O. O. 17,** a case involving a quarry in Franklin County in which Judge Hornbeck stated that explosions of over a thousand pounds of dynamite at a single time would be a nuisance in an **exclusive, residential area** for a distance of 2,745 feet. In the instant case the business is in an agricultural area and therefore the only land suitable and available for such a business and the only area wherein the annoyances and discomforts of a quarry would affect the least number of people. The future contemplated use of land in this area by others than the owners is not a proper consideration to support a denial of a present use. Similar future considerations were recently held not to justify the authority to condemn the land of another. In addition the amount of dynamite used in the Adams case exceeded many times the quantity used in the instant case. The holes drilled for placing the dynamite exceeded in depth the complete strata of limestone which the defendants intend to remove in Wayne Township. The Adams case does not support the issuance of any restraining order in the present situation. Adams v. Snouffer, supra.

The plaintiffs argue that the four blasts were only small tests to be used in court to show that blasting will not cause injury or damage, but that if unrestrained the defendant will use constantly increasing amounts of dynamite. This argument demonstrates how effectively the fears and apprehensions for the future are blended into the petition and testimony without immediate justification. If and when blasting or any other element of a nuisance becomes improper under the individual circumstances a court of equity may either restrain or regulate the conduct of such business. In Dale v. Bryant, supra, this member of the court stated:

"The defendants argue that a necessity exists in this county for the disposal of an increasing volume of automobiles; that the court should

impose regulations which would answer the need and protect the plaintiffs as was done in the case of public garbage and refuse. The power of a court to enjoin or modify common law nuisances which interfere with the rights of others is inherent in a court of general jurisdiction. This equitable power to impose conditions for modification, rather than abatement, of individual nuisances should not be confused with the primary legislative right to regulate on the same subject. Courts may modify a common law nuisance where modification is adequate to eliminate the nuisance or where a clear and immediate public necessity requires a compromise between conflicting individual rights."

The pleadings and the evidence indicate an absolute objection to a quarry per se and an anticipation of a nuisance, irrespective of location or care in operation. However counsel for the plaintiffs conceded in argument that a quarry is not a nuisance per se.

The only direct testimony of nuisance is that there were four blasts, some but not all of which were heard in nearby farm houses. Slight vibrations were felt, particularly nearby on the fourth blast, to the extent that one or more dishes vibrated. Otherwise there is no substantial evidence of the customary conditions associated with a common law nuisance.

Plaintiffs rely upon the assumption that this admittedly lawful business will not be conducted properly and therefore will in the future become a nuisance. Negligence, or a failure to properly operate a lawful business, which is not per se a nuisance, is never presumed, but must be established as a fact. The testimony which the court may consider on this issue was insufficient when the defendant moved to dismiss, however the court required the defendant to proceed because of the gravity of the two issues.

The record is full of fears and misapprehensions with respect to the water supply in the township however the plaintiffs did not support such conclusions. The evidence supports the legal presumption that the underground water used in that area is percolating in nature and does not orginate in a subterranean stream, except possibly one large spring, the origin of which is scientifically unknown. In addition the material to be disturbed or removed is not sufficiently deep or impervious to constitute an underground reservoir of water. The limestone serves as a filtering media with an affinity for water however this condition does not deprive an owner of his right to remove such material nor is there any justification in the record for concluding that its removal will be injurious to the wells in the area.

It is the conclusion of the court that the operation of a quarry in an unzoned area used exclusively for agricultural purposes is not a nuisance even though slight vibrations which cause no damage are recognized in a few nearby farm houses. The evidence in this case regarding a nuisance does not justify the issuance of a temporary order. The equitable balance of convenience and injury requires that the constitutional right of property prevail over the possibility of a potential nuisance or inconvenience in an agricultural area.

The request for a restraining order in each case is denied.