O'NEIL et al., Appellants,

v.

ATWELL et al., Appellees.

[Cite as *O'Neil v. Atwell* (1991), 73 Ohio App.3d 631.]

Court of Appeals of Ohio,
Portage County.

No. 90–P–2239.

Decided June 24, 1991.

*Benito C.R. Antognoli* and *Peter C. Kratcoski,* for appellants.

*William P. Michaels,* for appellee Raymond Atwell.

*James R. Silver,* for appellee Concord Downs Condominium Association.

JOSEPH E. MAHONEY, Judge.

Appellants, Alton O'Neil and Jean O'Neil, are the owners of a condominium located at 483–15 Concord Downs Lane in the residential development known as "Walden" in Aurora, Ohio. Appellee, Raymond Atwell, is the owner of the condominium located at 483–14 Concord Downs Lane, which is contiguous to the O'Neils' unit. Both units are subject to the terms of the Walden Association Warranty Deed and the Concord Downs Condominium Association. The Concord Downs Condominium Association ("Association") is a condominium unit owners' association which was organized and exists pursuant to the provisions of R.C. Chapter 5311.

Appellants were residents of Concord Downs when Atwell purchased his unit. Appellants purchased their unit, in part, because of the view from the rear, or south side, of their unit. It overlooked a wooded area with a creek and a large willow tree. Additionally, appellants had a large deck across the rear of their unit which offered them great privacy as it was not in view from any other neighboring unit.

The Atwell unit, on the other hand, featured a large deck on its east side, facing away from the O'Neils' unit. It also had a small "Romeo balcony" on the south side which led from the bedroom. However, this "Romeo balcony" was not visible from the O'Neils' deck and was rarely used as it was not large enough to facilitate barbecuing or entertaining.

The developer of the Walden community indicated that the development covered six hundred acres of land and featured an eighteen-hole golf course, single-family homes, and cluster condominiums. It was designed as a low density community that stressed a leisure lifestyle, privacy and the ability to enjoy fresh air without being interfered with by neighbors. The units were designed to allow the owners to enjoy as much privacy as possible in their outdoor spaces.

Shortly after Atwell purchased his unit, he contacted Robert Huston, president of the Association, to inform Huston of his plans to replace the "Romeo balcony" on the south side of his unit because it had fallen into poor repair. Huston advised Atwell that he needed to submit plans of the proposed changes to the Board of Managers of the Association as well as to the Architectural Review Committee.

Without first obtaining the approval of any of the appropriate boards, Atwell proceeded with the construction of a new deck in November 1987. In addition, instead of merely replacing the existing "Romeo balcony" with a similar unobtrusive structure, Atwell had constructed a huge bilevel deck across the entire south side of his unit. It was physically attached to the

O'Neils' deck and commanded a full view of the O'Neils' deck as it extended beyond the O'Neils' deck.

The O'Neils strongly objected to Atwell's new deck on the basis that it obstructed their view, compromised their privacy, and interfered with the use and enjoyment of their own deck. The O'Neils were also concerned that the new construction would adversely affect the value of their property.

The Board of Managers met on December 5, 1987, and decided that Atwell would have to remove the huge new deck. The board took into consideration the concerns of the O'Neils and the fact that Atwell had never received approval to construct the deck. At a subsequent meeting on December 12, 1987, which Atwell attended, the board reaffirmed its decision and instructed Atwell to tear down the new deck.

Atwell ignored the request of the board and proceeded to complete construction of his new deck. On June 14, 1988, the board notified Atwell by letter that he was in violation of its decision and that he would be required to remove the deck within thirty days or the board would take legal recourse. Atwell ignored the board again, and on November 28, 1988, he was served with a similar letter which instructed him to remove his deck by December 15, 1988. Atwell continued to ignore the board, but the board never took any action against Atwell.

On May 25, 1989, the O'Neils filed a complaint in the Portage County Common Pleas Court asking the court to grant a mandatory injunction requiring Atwell to remove the new deck and asking the court to issue a mandatory order compelling the Association to act in a manner consistent with the condominium documents. In the alternative, the O'Neils asked for judgment in their favor in an amount equal to the diminution of value of their condominium unit and other appropriate relief.

Subsequently, Atwell submitted a revised plan for his deck. At a meeting on July 31, 1989, the board approved his revised plan which called for him to remove approximately two feet of deck and install a latticework trellis between his deck and the O'Neils' deck which would stand six feet in height and further obscure the O'Neils' view.

A trial to the court commenced on July 31, 1990. On August 8, 1990, the Portage County Common Pleas Court granted judgment in favor of appellees on all counts. It is from this decision that appellants timely filed a notice of appeal. Appellants listed six assignments of error but argued only four, as follows:

"1. The trial court erroneously determined in its conclusions of law that plaintiffs-appellants' claim of nuisance was without merit, despite the fact that

the evidence and the trial court's findings of fact indicated facts sufficient to demonstrate the existence of a private nuisance according to Ohio law.

"2. The trial court erroneously decided that defendant-appellee Atwell's deck construction was not a nuisance pursuant to the condominium documents, and the trial court's failure to require the defendant-appellee condominium association to comply with and uphold its own condominium documents constitutes an abuse of discretion.

"3. Atwell's construction of a new deck and his enlargement of an existing deck, and the Concord Downs Association's subsequent approval of the construction and failure to compel removal of the existing structures is [*sic*] in violation of Ohio Condominium Act, Chapter 5311 of the Ohio Revised Code.

"4. Atwell's construction of a new deck and his enlargement of an existing deck, and the Concord Downs of Walden Association's subsequent approval of the construction and [its] failure to require removal of the existing structures were in violation of the Declaration of Concord Downs Condominium, its Covenants and Restrictions and By–Laws."

In the first assignment of error, appellants assert that the trial court erred in determining that their claim of private nuisance under Ohio law was without merit.

Black's Law Dictionary defines "nuisance" as follows:

"That activity which arises from unreasonable, unwarranted or unlawful use by a person of his own property, working obstruction or injury to right of another, or to the public, and producing such material annoyance, inconvenience and discomfort that law will presume resulting damage. That which annoys and disturbs one in possession of his property, rendering its ordinary use or occupation physically uncomfortable to him. An offensive, annoying, unpleasant, or obnoxious thing or practice; a cause or source of annoyance, especially a continuing or repeated invasion or disturbance of another's right, or anything that works a hurt, inconvenience or damage." Black's Law Dictionary (5 Ed.Abr.1983) 552–553.

A "private nuisance" is defined as:

" * * * generally anything that by its continuous use or existence works annoyance, harm, inconvenience or damage to another landowner in the enjoyment of his property. Activity which results in an unreasonable interference with the use and enjoyment of another's property. A nuisance affecting a single individual or definite small number of persons in enjoyment of private rights not common to the public." Black's Law Dictionary, *supra*, at 624.

■ Ohio case law has stated that the test as to the amount of annoyance necessary to constitute a nuisance is measured by the degree of discomfort

that a person of ordinary sensibilities would experience. *Adams v. Snouffer* (1949), 88 Ohio App. 79, 82, 44 O.O. 17, 18, 87 N.E.2d 484, 486; *Kepler v. Indus. Disposal Co.* (1948), 84 Ohio App. 80, 82, 39 O.O. 111, 112, 85 N.E.2d 308, 309–310. In essence, the trial court must look at what persons of ordinary tastes and sensibilities would regard as an inconvenience or interference materially affecting their physical comfort to a degree which would constitute a nuisance.

■ In the present case, the evidence established that the Walden development was placed in such a way as to highlight and take advantage of the privacy of each condominium unit. It is clear that Atwell had a preexisting large deck on the east side of his unit which faced away from the O'Neils' unit. Under said circumstances, Atwell was unreasonable in constructing an enormous new deck that infringed upon the O'Neils' only private outdoor space that their unit offered.

Appellants presented evidence through the testimony of Mr. O'Neil on the effect of Atwell's new deck on their use of their own deck. Mr. O'Neil stated:

"Well, this is a very large deck that now dominates the entire left view, if you will, of my deck. It dominates the entire back portion of this building that we all live in. It has clearly impeded my view of everything to the left. It is so close it actually abuts my deck, joins to the little fence that splits us, where before there was a large space. It is so close that anyone on that deck can be heard very clearly. It is such a major massive thing that has suddenly intruded itself on our deck, on our privacy, that it has greatly reduced our ability to use it. [Atwell's deck] [c]auses us discomfort to go there. We are reluctant to use it as we used to do. It has changed the whole character of the outdoor kind of living that we used to enjoy, and to us is a very harmful thing. It's damaged us greatly.

" * * *

" * * * The enjoyment of our property has been greatly diminished by this. We do not feel we can use our deck comfortably. It is right on top of us, it is huge. It dominates the general area. My views are gone, my privacy is gone. Noise is a problem, vision is a problem. And it is something that makes me very uncomfortable, physically uncomfortable to just go out on the deck. If someone is on the adjoining deck we feel restrained, we simply do not want to go there, we wouldn't go and barbecue. We wouldn't talk in tones above a whisper. We can reach over and touch it. It is just to us a terribly obnoxious intrusion on our life and on the quiet enjoyment of our property. We believe we have been irreparably harmed by this."

The photographs admitted into evidence demonstrate the close proximity of Atwell's deck to the O'Neils' deck and the disproportionate size of the structure. They also show how the view from the O'Neils' deck has been blocked by the new construction.

Appellee, Atwell, failed to rebut appellant's testimony or in any way show that the addition of his new deck was warranted or reasonable. Under such circumstances, it was error for the trial court to conclude that Atwell's deck did not constitute a nuisance pursuant to Ohio law.

Appellants' first assignment of error is well taken.

In the second assignment of error, appellants contend that the trial court erred in determining that Atwell's new deck was not a nuisance pursuant to the rules of the Association.

Article III(B)(5) of the Declaration of Condominium Ownership for Concord Downs of Walden Condominium states:

"No noxious or offensive activity shall be carried on in any unit or in the common areas and facilities, nor shall anything be done therein, either willfully or negligently, which may be or become an annoyance to the other owners or occupants."

Initially, we note that the language contained in Article III(B)(5) presents an issue of enforceability. Where restrictions contained in the declaration of condominium ownership are unclear, susceptible to being exercised in an arbitrary, capricious, and unreasonable manner, they will be held invalid and unenforceable. See *Prestwick Landowners' Assn. v. Underhill* (1980), 69 Ohio App.2d 45, 23 O.O.3d 36, 429 N.E.2d 1191 (dealing with consent restrictions). However, since the parties do not expressly submit this issue, we will not address it.

In *Georgetown Arms Condominium Unit Owners' Assn. v. Super* (1986), 33 Ohio App.3d 132, 514 N.E.2d 899, the Court of Appeals for Cuyahoga County held that condominium declarations must be strictly construed since the condominium concept depends upon reasonable use and occupancy rules and regulations. The court quoted *Sterling Village Condominium, Inc. v. Breitenbach* (Fla.App.1971), 251 So.2d 685, 688, which stated:

" * * * Every man may justly consider his home his castle and himself as the king thereof; nonetheless his sovereign fiat to use his property as he pleases must yield, at least in degree, where ownership is in common or cooperation with others. The benefits of condominium living and ownership demand no less. The individual ought not be permitted to disrupt the integrity of the common scheme through his desire for change, however laudable that change might be."

■ In the present case, it is clear that Atwell's new deck was an annoyance and a nuisance to the O'Neils. Therefore, it was prohibited by Article III(B)(5) of the condominium declaration, and the trial court erred in determining that the deck did not constitute a nuisance pursuant to the Association's own rules.

Appellants' second assignment of error is sustained.

■ In the third assignment of error, appellants claim that Atwell's construction of the new deck and the Association's subsequent approval of the construction violated the Ohio Condominium Act, R.C. Chapter 5311. Specifically, appellants base their argument on R.C. 5311.04(D), which states, in pertinent part:

"Except as provided in section 5311.051 of the Revised Code, the percentage of interest in the common areas and facilities of each unit as expressed in the original declaration shall not be altered except by an amendment to the declaration unanimously approved by all unit owners affected.   * * * "

Appellants argue that Atwell altered the percentage of interest of the remainder of unit owners in the common areas and limited common areas through the construction of his deck. Further, he did so without first obtaining the unanimous approval of all unit owners affected.

It is clear that appellants' argument must be rejected. The addition of Atwell's deck did not affect the percentage of interest of each unit owner. They still owned the same percentage of common area as they did prior to the construction. The only change was in the appearance of a portion of the limited common area. Hence, R.C. 5311.04(D) does not apply to the case *sub judice*.

Appellants' third amendment of error is without merit.

■ In the fourth assignment of error, appellants contend that the Association's failure to require removal of Atwell's deck was in violation of the Declaration of Concord Downs of Walden Condominium, its covenants, restrictions and bylaws.

Article VI(A)(2)(f) of the condominium declaration states that it is the responsibility of each unit owner:

"Not to make any alterations in the portions of the unit and the L.C.A. [limited common area] appertaining thereto or the buildings which are to be maintained by the Association or on the common areas and facilities or remove any portion thereof or make any additions thereto * * * without first obtaining the written consent of the managers of the Association * * *."

Article VIII, Section 2 of the Declaration of Covenants and Restrictions states:

"No structure shall be commenced, erected, placed, moved, on to or permitted to remain on any Lot, or Other Parcel of Land, and the word 'Lot' as used in this Article VIII shall hereafter mean and include any parcel of land to which this Deed and Declaration applies, nor shall any existing Structure upon any Lot be altered in any way which materially changes the exterior appearance thereof, nor shall any new use be commenced on any Lot, unless plans and specifications (including a description of any proposed new use) therefore [*sic* ], shall have been submitted to and approved by the Architectural Committee. Such plans and specifications shall be in such form and shall contain such information as may be required by the Architectural Committee."

It is clear that the Association had failed to follow its covenants, restrictions and bylaws at the time the underlying case was commenced by appellants. Atwell had erected a new deck without obtaining approval from the Association or the Architectural Committee. Additionally, after the Association learned of Atwell's actions, it failed to enforce its own rules.

This issue, however, was made moot when the Association eventually approved resubmitted plans and allowed Atwell to keep his new deck with minor revisions. At that point, Atwell had complied with the appropriate procedures.

Appellants' fourth assignment of error is without merit.

Having sustained appellants' first two assignments of error, the judgment of the trial court is hereby reversed; and the matter is remanded to the trial court to grant an injunction in favor of appellants and assess costs accordingly. The costs of this appeal are to be taxed against appellees.

*Judgment accordingly.*

FORD, P.J., and EDWARD J. MAHONEY, J., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.