Rothfuss et al., Appellants, *v.* Hamilton Masonic Temple Co. of Hamilton, Appellee.

(No. 72-539—Decided May 30, 1973.)

179

*Mr. Irving I. Saul, Miss Mary C. Lord* and *Mr. T. Patrick Lordeon,* for appellants.

*Messrs. Baden, Jones & Scheper,* for appellee.

CORRIGAN, J.   Appellants' six propositions of law can be condensed into two legal questions for this court to consider.

Appellants' first contention is that the trial court did

not err in its charge to the jury that the appellee maintained a qualified nuisance and was negligent as a matter of law.

This court has recoginzed that the duty owed by possessors of land to those who may be injured on their premises is a different duty than the duty owed to ordinary social guests, as a result of the doctrine of qualified nuisance. See paragraph three of the syllabus in *Taylor* v. *Cincinnati* (1944), 143 Ohio St. 426, 427, which reads:

"As distinguished from absolute nuisance, a qualified nuisance or nuisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm, which, in due course, results in injury to another."

In elaborating upon this type of nuisance or nuisance dependent upon negligence, this court stated, at 441:

" * * * It most frequently consists of acts or conditions involving unreasonable risk of harm resulting in personal injury. In such case, of course, negligence must be averred and proven to warrant a recovery. Bates Pleading and Practice, 1925, Section 2171*a*. Applying such connotation, 'nuisance' may be and frequently is the consequence of negligence."

That statement in *Taylor*, coupled with Judge Cardozo's opinion in *McFarlane* v. *Niagara Falls* (1928), 247 N. Y. 340, 160 N. E. 391, as quoted in the *Taylor* opinion, indicates that a civil action based upon the maintenance of a qualified nuisance is essentially an action in tort for the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm, ultimately resulting in injury. The dangerous condition constitutes the nuisance. The action for damages is predicated upon carelessly or negligently allowing such condition to exist.

In an action based on the maintenance of a qualified nuisance, the standard of care owed to one injured is that care a prudent man would exercise in preventing potentially or unreasonably dangerous conditions to exist. It is the same standard of care required of owners and occupiers of land

toward business invitees, but is quite dissimilar from the duty to warn social guests of the existence of such a condition. *Scheibel* v. *Lipton* (1951), 156 Ohio St. 308.

The Court of Appeals found that the trial court erred in instructing the jury that the appellee maintained a qualified nuisance and, by virtue thereof, was negligent as a matter of law. That court stated that it is the province of the court to define a qualified nuisance, and, further, that it is the province of the jury to determine whether the circumstances of the case before it come within such given definition.

It has been the settled law of Ohio that, if all the material facts relevant to the alleged negligence are undisputed, and admit of no rational inference but that of negligence, and are sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, then the question of negligence becomes a matter of law merely, and it is the duty of the trial court to so instruct the jury. *Cleveland, C. & C. Rd. Co.* v. *Crawford* (1874), 24 Ohio St. 631, 639; *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215, 220.

In the present case, the evidence relative to the maintenance of the window wells is undisputed  The wells were constructed in 1927 as a part of the appellee's building. They are located contiguous to the parking area provided by appellee, and in close proximity to the natural path of ingress and egress to parked automobiles. Appellee's building is so constructed that these window wells are inadequately lighted and shadowed. The wells are open and unguarded, except for two and one-half inch curbings around their semi-perimeters, and have so remained since their construction in 1927.

Safety statutes in force at the time of construction required guards for areaways but not for window wells *per se*. The Revised Code Section in effect at the time of the accident, and the subsequent Ohio Building Code, specifically require the installation of protective guard railings on newly constructed buildings and those in the process of

repair, labelling open, unguarded wells as public nuisances. R. C. 3781.11.

It is the opinion of this court that the only rational inference which can be drawn from this evidence is that the existence and continued maintenance of these windows wells under the foregoing circumstances was unquestionably dangerous and created an unreasonable risk of harm. As stated by Judge Cardozo in *McFarlane* v. *Niagara Falls, supra* (247 N. Y. 340): "If danger there was, then also there was nuisance, though nuisance growing out of negligence."

The trial court did not err in its instruction to the jury that the appellee was negligent as a matter of law.

Appellants' second contention is that the Court of Appeals erred in finding as a matter of law that appellant Mrs. Rothfuss was contributorily negligent in stepping into the window well.

Appellants' additional argument that contributory negligence is not available to the appellee in an action brought for the maintenance of a qualified nuisance is without merit because it fails to distinguish between nuisances *per se* and qualified nuisances which depend upon negligence. Contributory negligence is ordinarily a proper defense in an action alleging negligence, except in those instances wherein absolute liability is imposed by statute. By definition, a qualified nuisance does not impose absolute liability. *Taylor, supra,* and *McFarlane, supra.*

Contributory negligence is available as a defense in the present case, and the remaining issue for this court to consider is whether there was sufficient conflicting evidence or the existence of a combination of circumstances relative to the issue of appellant's contributory negligence that reasonable minds might arrive at different conclusions. If such a conflict or combination of circumstances exists, it is the province of the jury to determine wherein the probable truth lies, and it is reversible error for the court to invade that province of the jury. *Painesville Utopia Theatre Co.* v. *Lautermilch* (1928), 118 Ohio St. 167;

The Court of Appeals herein relied on this court's opinions in *Flury* v. *Central Publishing House* (1928), 118 Ohio St. 154; *McKinley* v. *Niederst* (1928), 118 Ohio St. 334; and *Jeswald* v. *Hutt* (1968), 15 Ohio St. 2d 224, in determining that the evidence relating to appellant's contributory negligence indicated that the fall was precipitated by the "one step" taken by plaintiff in the darkness, and that no act or omission by the appellee tended to refute this inference.

The *Flury* and *McKinley* opinions involved the application of the so-called "one step in the dark" rule. In both cases, the evidence was uncontroverted that the plaintiffs had, without knowledge or sensory investigation as to what the darkness might conceal, stepped from a lighted area into total darkness at their peril. In both cases, the court held that, in the absence of any duty on the part of the defendants to make the premises safe, such steps into total darkness raised an inference of negligence which was not refuted by other evidence.

The *Jeswald* case involved accumulations of ice and snow on an unlighted parking lot, as well as darkness. The court held that, since the hidden defect in the parking lot surface was minor and the defendant was under no legal duty to light the lot or remove natural accumulations of ice and snow, the plaintiff's own lack of ordinary care was the proximate cause of her injury. In paragraph three of the syllabus, the court stated:

"'Darkness' is always a warning of danger, and for one's own protection it may not be disregarded."

In those three cases, the evidence introduced raised the inference of the plaintiffs' lack of ordinary care.

*Plotkin* v. *Meeks* (1936), 131 Ohio St. 493, however, states that the rule announced in the *McKinley* case is limited in its application and operation to the facts there presented.

The court distinguished *McKinley*, in which the plaintiff had stepped into the hallway in total darkness, whereas, in *Plotkin*, evidence of some degree of light in the opening to the stairway where the injury occurred was presented,

184

tending to refute the inference of plaintiff's contributory negligence.

Similarly, the court, in *Painesville, supra* (118 Ohio St. 167), held that the inconsistent testimony of a plaintiff as to whether her accident was caused in the process of opening the door of a darkened stairway, or as a result thereof, raised doubts as to which of her inconsistent answers was "more probably true" and that this conclusion was solely within the province of the trier of the facts.

Likewise, numerous cases from this and other jurisdictions hold that it is not contributory negligence to fail to look for dangers where there is no reason for a person of ordinary prudence and care to apprehend or anticipate any. *Northwest Airlines* v. *Glenn L. Martin Co.* (1955), 224 F. 2d 120; *Cleveland, C. & C. Rd. Co.* v. *Crawford, supra* (24 Ohio St. 631); and *Fogle* v. *Shaffer* (1958), 167 Ohio St. 353.

The Court of Appeals for Geauga County stated, in *Chardon Lakes Inn Co.* v. *MacBride* (1937), 56 Ohio App. 40, at page 46:

"It can not be said that a person is guilty of negligence as a matter of law under all circumstances when such person enters a dark place where his sense of sight alone does not enable him to see what is before him. The use made of senses with which we are endowed, other than the sense of sight, may be such as to create a factual question as to whether the person entering a dark place has acted in a reasonably prudent manner and as ordinarily prudent persons usually act under like circumstances."

A number of jurisdictions have held that the question of whether a plaintiff who is injured while proceeding in a dark parking lot is guilty of contributory negligence is one for the jury and depends upon the circumstances of each case, including the nature and degree of darkness existing, the nature and appearance of the premises, and the availability of an alternate route. See 22 A. L. R. 3d 286, 301, 305. See, also, 14 A. L. R. 2d 780, 801; 23 A. L. R. 3d 441, 467; and 38 A. L. R. 3d 10, 96.

In the present case, there was conflicting testimony

as to light conditions in the parking lot, especially in the area of the window well.

The appellant, herself, testified on direct examination:

"Q. Now, what was the condition of the light in the parking lot area?

"A. It was partially light, partially light and shadows around.

"Q. Could you see the hole?

"A. No sir.

"Q. Before you fell into it?

"A. No, I couldn't see the hole."

On cross-examination, she testified:

"Q. Now, when you came out of the building, I gather that it was quite dark outside, the sun having set sometime before you left the building, is that correct?

"A. That's right.

"Q. So that if there was any light in the area it would have been from either street lights or lights on the building or both, is that correct?

"A. It was partially lit.

"Q. Do you know where that light was coming from?

"A. I don't remember.

"Q. All right. Now with regard to the actual area in which you fell, can you recall whether it was lighted?

"A. It was—

"Q. Or was it dark?

"A. It was partially dark.

"Q. Was it dark enough that you couldn't see the hole in which you fell before you fell into it?

"A. That's right."

On direct examination, the night custodian, Clarence Bryant, testified:

"Q. You may state to the jury, Mr. Bryant, whether—what the light conditions were at the window well, whether it was dark or whether it was light.

"A. It would naturally be dark because the car shadowed and her shadow and walking away from the light, I would say it would be dark."

This testimony lacks the certainty required to satisfy

the step into "total darkness" rule set forth in the *McKinley* decision. There is a conflict between the appellant's testimony and the custodian's as to the light conditions. Appellant's testimony, itself, demonstrates some uncertainty. Further testimony lends itself to an inference that the appellant may have been deceived and lulled into a false sense of safety by the appearances of the parking lot, and by the failure of her companions to warn her of the existence of the window wells.

Viewing the evidence most favorably toward appellants for the purpose of appellee's motion for a directed verdict, we find that sufficient doubt existed with respect to the witnesses' testimony and the effect of the conditions and circumstances associated with appellant's injury so as to lend an inference that appellant exercised ordinary care in the instant case. This inference is all that is necessary under the *Plotkin* and *Painesville* cases, *supra*, to bring this case within the province of the jury for an ultimate resolution as to the weight to be given the conflicting evidence. It was, therefore, error for the Court of Appeals to reverse the judgment of the Court of Common Pleas and enter final judgment for the defendant.

Upon the basis of this court's decisions in *Taylor* v. *Cincinnati, supra* (143 Ohio St. 426), *Plotkin* v. *Meeks, supra* (131 Ohio St. 493), and *Painesville Utopia Theatre Co.* v. *Lautermilch, supra* (118 Ohio St. 167), the judgment of the Court of Appeals is reversed and the judgments of the Court of Common Pleas are reinstated.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.