OPINION
This matter presents a timely appeal from a judgment rendered by the Columbiana County Common Pleas Court, finding that defendant-appellant, S.H. Bell Company, maintained a qualified, private nuisance and awarding plaintiffs-appellees, John N. Blankenship, et al., the sum of $52,000.00, as well as injunctive relief.
Appellant operated two facilities in the "East End" area of East Liverpool, Ohio. The first establishment, known as the Little England facility, opened in 1963 and the second establishment, the Michigan Avenue facility, opened in 1964. (Tr. 650-652). The "East End" is an industrialized area, consisting of various companies including the Hall China Company, the Ferro Corporation, W.T.I., Dacar Chemical and a water treatment plant. (Tr. 654-655). Appellant's business consists of storing materials for its customers including various metals, minerals and semi-finished raw materials. (Tr. 639). As part of its operations, appellant crushes many of these materials into pieces and then transports the material to its customers by use of trucks. In crushing the material, dust could be seen escaping appellant's facilities and entering the atmosphere of the surrounding area. Both of appellant's facilities are regulated by state and federal agencies and were issued permits for operation. Appellant was never found to have violated any of the permits for either of the facilities in question. (Tr. 356).
With the exception of the Columbiana Metropolitan Housing Authority (CMHA), appellees consisted of residents of a nearby neighborhood to appellant's "East End" facilities. On July 20, 1994, appellees filed their initial complaint alleging that appellant had continuously caused and/or permitted the release of irritating and toxic dusts from its facilities, thereby rising to the level of nuisance. Appellees claimed that such dust caused damage and diminished value to their real and personal property. On March 4, 1996, appellant filed two motions for summary judgment, one concerning appellees' property damage claim, and the other concerning appellees' claim for bodily injury. On October 3, 1996, the trial court granted appellant's motion for summary judgment regarding the bodily injury claim, but denied the summary judgment motion concerning appellees' property damage claim. On January 10, 1997, appellant filed an additional motion for summary judgment regarding appellees' claims for property damage, arguing that appellees did not prove a causal connection between appellant's operations and appellees' damages. On March 6, 1997, the trial court partially granted same, thereby dismissing some of appellees' claims. The trial court later allowed three appellees to be reinstated to the cause of action.
A jury trial commenced in this matter on September 15, 1997, and concluded on September 23, 1997. The jury ultimately found in favor of appellees and awarded damages in the aggregate sum of $70,000.00. The trial court adopted the jury's finding in its October 2, 1997 judgment entry. Appellant thereafter moved for partial judgment notwithstanding the verdict, a new trial or remittitur on October 14, 1997. On December 11, 1997, the trial court denied appellant's motion for partial judgment notwithstanding the verdict, but it granted appellant's motion for remittitur, thereby reducing appellees' damage award from $70,000.00 to $52,000.00. Additionally, on March 11, 1998, the trial court granted appellees' claim for injunctive relief which was filed on January 9, 1998. This appeal followed.
Appellant sets forth ten assignments of error on appeal. However, it should be noted that appellant combines its ten assignments of error into four specific arguments and has further failed to definitively address each assignment of error within these four arguments. Therefore, pursuant to App.R. 12(A)(1)(c)(2), this court will only address those arguments assigning error which appellant specifically set forth.
Since appellant's first and second arguments assigning error have a common basis in law and fact, they will be discussed together and allege respectively as follows:
 "The Court of Common Pleas erred in denying Appellee S.H. Bell Company's ("Bell's") Motion for Summary Judgment: Property Damage Claims, finding that there were genuine issues of material fact as to whether Bell conducted its operation negligently, thereby creating a qualified private nuisance.
 "The Court of Common Pleas erred in denying Bell's Motion for Summary Judgment: Property Damage Claims, finding that there were genuine issues of material fact as to whether any activities at Bell's facilities caused any damage claimed by Plaintiffs."
Appellant essentially argues that appellees failed to prove that it created a qualified private nuisance. A private nuisance invades a person's private use of their land. Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704. It does not become a public nuisance merely because it interferes with many people. Brown, supra. A qualified nuisance is premised on negligence and, "`* * * consists of an act lawfully but so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another. * * *'" State ex rel. Schoener v. Hamilton Cty. Bd.of Commrs. (1992), 84 Ohio App.3d 794, 799, quoting Metzger v.Pennsylvania, Ohio Detroit RR. Co. (1946), 146 Ohio St. 406. Negligence can be proven by showing a duty owed, a breach of that duty and that the breach proximately caused the injury. Menifeev. Ohio Welding Products Inc. (1984), 15 Ohio St.3d 75. Furthermore, in Rothfuss v. Hamilton Masonic Temple (1973),34 Ohio St.2d 176, 180, the Ohio Supreme Court held, "In an action based on the maintenance of a qualified nuisance, the standard of care owed to one injured is that care a prudent man would exercise in preventing potentially or unreasonably dangerous conditions to exist. * * *"
In the present case, the trial court denied appellant's motion for summary judgment concerning property damage. Summary judgment is governed by Civ.R. 56(C), which states, in pertinent part:
 "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
Furthermore in Welco Industries, Inc. v. Applied Cos. (1993),67 Ohio St.3d 344, 346, the Ohio Supreme Court held that summary judgment is proper when, "`* * * it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to [the moving party].'" In determining whether a trial court has properly granted summary judgment, a court of appeals must conduct a de novo review of the record. Grafton v. OhioEdison Company (1996), 77 Ohio St.3d 102.
Appellant argues that it took extensive measures to substantially curtail the emission of dust from its operations. Therefore, it argues that it did not operate negligently and appellees failed to demonstrate that it acted unreasonably, thereby rising to the level of negligence.
The record indicates that appellees presented a video tape and testimony demonstrating appellant's negligence. The video tape depicted dust emitting from appellant's facility which engulfed the area. (Tr. 166). Appellees' witnesses James Morehead and Evelyn Morehead also testified that they could see thick dust emitting from appellant's facility which came directly towards their residence. (Tr. 220, 276). James Morehead further testified that appellant did not place a tarp over the trucks, thereby allowing the dust to flow freely from the trucks. (Tr. 230). Additionally, the record indicates that although appellant was not formally found to have violated its permits, Edward R. Argentine, an inspector for the North Ohio Valley Air Authority (NOVA), testified that he had witnessed emissions which exceeded appellant's permits. (Tr. 356). Furthermore, Samuel H. Bell, the vice president for appellant conceded that there was one instance when an employee inadvertently turned off a machine which controlled the flow of dust. (Tr. 706). Therefore, viewing the evidence in a light most favorable to appellees, reasonable minds could find that appellant did not use those methods which a prudent man would exercise to prevent potentially or unreasonably dangerous conditions. Rothfuss, supra; Welco, supra.
To find appellant negligent, it was also necessary for appellees to prove that appellant's breach of duty proximately caused their injury. In Strother v. Hutchinson (1981), 67 Ohio St.2d 282,287, the Ohio Supreme Court, quoting Clinger v. Duncan
(1957), 166 Ohio St. 216, 223, defined proximate cause, stating, "`* * * it is generally true that, where an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established * * *.'" Furthermore, foreseeability is an element of proximate cause. Strother, supra.
In Menifee, supra, the Ohio Supreme Court elaborated the foreseeability test, stating, "[t]he test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." Proximate cause does not require that the actor know of the particular injury, but looks to whether the injury is within the scope of risk of the dangerous condition created by the actor. Strother, supra.
Appellant argues that appellees have failed to demonstrate the required proximate cause because there were several other industrial facilities in the vicinity of appellant's facilities. Appellant argues that appellees did not prove that their property damage came from appellant's operations, as opposed to the neighboring industries. Therefore, appellant argues that it could not have been negligent because the requisite proximate cause was not demonstrated.
John M. Bell, appellant's president, testified that dust was a natural consequence of its operations, and could not be fully eliminated. (Tr. 663). Appellees further presented a video tape which demonstrated that appellant's facilities emitted the dust in question, and further that such dust engulfed the area. Appellees' witnesses, James Morehead and Evelyn Morehead, also provided testimony indicating that the dust coming from appellant's facilities came toward and circled their neighborhood. (Tr. 220, 277). Appellees provided expert evidence illustrating that the particulate found on their property was similar to those compounds stored and handled in appellant's facilities. (371, 380). Therefore, reasonable minds could have determined a reasonably prudent person would have found that appellees' property damage was likely to result from appellant emitting dust. Menifee, supra.
Given that reasonable minds could have found that appellant breached its duty and proximately caused appellees' injury, and the trial court did not err in denying appellant's motion for summary judgment on the issue of damages.
Appellant's first and second assignments of error are found to be without merit.
Appellant's third argument assigning error alleges:
 "The Court of Common Pleas erred in denying Bell's Motion for Summary Judgment: Property Damage Claims, finding that there were genuine issues of material fact as to whether Plaintiffs' claims were barred by the applicable statute of limitations."
Under R.C. 2305.09, an action must generally be brought within four years of when such cause of action becomes apparent to the party initiating the claim. In Brown, supra, at 718, the court distinguished between a permanent nuisance and a continuing nuisance, stating:
 "Where a nuisance in the form of air pollution is permanent in that the structure giving rise to the pollution is of a permanent nature, pollution is consistently produced and is not practicably abatable, the statute of limitations begins to run at the time that the nuisance begins or is first noticed, provided that the permanent nature of the nuisance can be ascertained at that time. * * * Conversely, where an air pollution nuisance is temporary or recurrent in that the pollution is not a constant consequence of the operation or is aba table by reasonable means, a nuisance action can be brought for damages for those injuries incurred within the applicable period, regardless of when the nuisance began. (Emphasis added).
In the present case, the trial court found that the nuisance was continuing, and this finding was supported by the record. The record indicated that appellant had taken measures and incurred considerable expense to alleviate the dust emissions. The testimony indicated that these procedures were working as the level of dust in the surrounding area had been reduced. Furthermore, the trial court granted injunctive relief requiring that appellant keep a video monitoring system on its premises; that appellant tarp all trucks transporting the crushed materials; and, that appellant develop a system for unloading railroad cars to halt visible clouds of dust from leaving its facilities. These measures, coupled with the measures already being taken by appellant, will abate the dust emissions from appellant's premises. Therefore, this nuisance is abatable by reasonable means, so the four year statute of limitations did not preclude appellees' cause of action. Brown, supra.
Appellant's third assignment of error is found to be without merit.
Appellant's fourth argument addresses damages and alleges:
 "The Court of Common Pleas erred in denying Bell's Motion for Partial Judgment Notwithstanding the Verdict, New Trial or Remittitur, concluding that there was adequate evidence to support the jury's assessment of damages for property damage, even though Plaintiffs offered no evidence of any diminution in the value of their homes, as they must to recover such damages."
In Ohio Collieries Co. v. Cocke (1923), 107 Ohio St. 238,248-249, the Ohio Supreme Court held that the measure of damages for restoration is:
 "* * * the reasonable cost of restoration, plus the reasonable compensation for the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property before and after the injury, in which case the difference in market value becomes the measure."
However, in Thatcher v. Lane Constr. Co. (1970), 21 Ohio App.2d 41, the court citing Northwestern Ohio Natural Gas Co. v. FirstCongregational Church (1933), 126 Ohio St. 140, held that the general rule in Ohio Collieries, supra, was not an exact formula which should be applied in every case as the only permissive measure of damages.
In the present case, the record indicates that the damages awarded were not an arbitrary amount as there was evidence presented of the value of the property at the time appellees purchased their homes, and evidence of the present value from appraisals. The trial court further reviewed the total damages awarded by the jury and remitted the award of a diminution of property value damage, finding that appellees could not collect for both diminished value and restoration costs. Therefore, the trial court carefully inspected appellees' damages and did not err in awarding same.
Appellant's fourth assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Donofrio, J., concurs.
Vukovich, J., concurs.
APPROVED: EDWARD A. COX, PRESIDING JUDGE.