JOURNAL ENTRY AND OPINION
Plaintiffs-appellants, Nikola and Bosa Rodic, appeal the judgment of the Cuyahoga County Court of Common Pleas granting the motion for summary judgment of defendant-appellee Walter J. Koba, III. For the reasons that follow, we affirm.
Appellee moved into his home on Grantwood Avenue in the City of Parma in April of 1994. Appellants lived next door. When appellee purchased his home, the garage, which is immediately adjacent to the west property line of appellants' backyard, was in a state of disrepair. Appellee testified that there was such extensive damage to the three eight-foot concrete cinder block walls of the garage that a good wind would have knocked the garage over at any time.
In the summer of 1996, appellee hired a contractor, Preston Darling, to tear down the garage. Prior to hiring Darling, appellee did not check Darling's credentials, ask for references or check with the City of Parma Building Department to ascertain whether Darling was licensed by the City of Parma. Neither appellee nor Darling applied for the permit required by the City of Parma for the demolition or removal of any structure.
On July 21, 1996, Darling and several helpers tore the roof off appellee's garage. Darling left the concrete cinder block walls standing but made no attempt to shore them or support them. Darling and his crew returned on Monday, July 23, 1996, at approximately 5:00 p.m. to continue with the demolition of the garage.
On that day, appellant Nikola Rodic returned home from work shortly before 5:00 p.m. He changed his clothes and went outside to mow his lawn. As he began cutting his lawn, he observed three men in appellee's garage and one on a truck in appellee's driveway. Appellant completed mowing his front yard without incident and began mowing his backyard. He made one complete pass by the garage, and started on the second pass, when suddenly, without warning, the concrete wall of appellee's garage immediately abutting appellant's property came crashing down onto appellant's backyard. One of the concrete cinder blocks from the wall fell on appellant's foot, injuring his Achilles' tendon. Appellant was out of work for six months as a result of his injuries.
Appellants initially filed suit on January 21, 1997. After dismissing their lawsuit, they subsequently refiled suit on April 1, 1998, asserting claims against appellee, Preston Darling, Sr. and Darling Sunoco[1] for negligence, nuisance, trespass and loss of consortium.
At a pretrial conference on September 1, 1998, the trial court ordered that discovery was to be completed by October 30, 1998 and dispositive motions were to be filed by November 30, 1998.
On November 30, 1998, appellee filed his motion for summary judgment, arguing that because Darling was an independent contractor and appellee did not actively supervise his work, appellee was not liable as a matter of law for appellants' injuries. Appellants filed their brief in opposition to appellee's motion on January 8, 1999.
On February 22, 1999, appellants filed a motion to compel discovery, seeking an order that Preston Darling appear for a deposition that appellants had noticed on January 14, 1999. The trial court subsequently denied appellants' motion to compel discovery and granted appellee's motion for summary judgment. Appellants then dismissed their claims against Darling and filed this timely appeal.
Appellants assign two errors for our review:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DENIED PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF PRESTON DARLING.
In their first assignment of error, appellants contend that the trial court erred in granting appellee's motion for summary judgment.
We review the trial court's granting of summary judgment de novo in accordance with the standards set forth in Rule 56(C) of the Ohio Rules of Civil Procedure. North Coast Cable v. Hanneman (1994),98 Ohio App.3d 434, 440. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997), 77 Ohio St.3d 421, 430. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler(1988), 38 Ohio St.3d 112. Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. State ex rel. The V Cos. v. Marshall (1988), 81 Ohio St.3d 467, 473; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
In general, an employer is not liable for the acts of an independent contractor. Strayer v. Lindeman (1981), 68 Ohio St.2d 32, 34, citing 3 Ohio Jurisprudence 3d 332, Agency, Section 216. There are exceptions to the general rule, however. An employer may be held liable for injuries resulting from its own negligence in selecting or retaining an independent contractor. An employer may also be held vicariously liable for the negligence of an independent contractor performing certain non-delegable duties which are imposed by statute, contract, franchise or charter, or by the common law. An employer may also be held vicariously liable for the negligence of an independent contractor under the doctrine of agency by estoppel, which requires a showing of induced reliance by a third person upon an ostensible agency. Albain v. Flower Hospital (1990), 50 Ohio St.3d 251, 256.
Appellants first assert that appellee is vicariously liable for Darling's negligence and, therefore, the trial court improperly granted appellee's motion for summary judgment, because the duty to exercise due care in the demolition of a structure is a non-delegable duty since the work involved is inherently dangerous.
The Ohio Supreme Court explained the non-delegable duty doctrine in Richman Bros. v. Miller (1936), 131 Ohio St. 424, at paragraph one of the syllabus, where it stated: Where danger to others is likely to attend the doing of certain work, unless care is observed, the person having it to do, is under a duty to see that it is done with reasonable care, and cannot, by the employment of an independent contractor, relieve himself from liability for injuries resulting to others from the negligence of the contractor or his servants. See, also, Covington Cincinnati Bridge Co. v. Steinbrock Patrick (1899), 61 Ohio St. 215, at paragraph one of the syllabus.
Employers are held liable under the traditional non-delegable duty exception because the nature of the work contracted involves the need for some specific precaution, such as a railing around an excavation in a sidewalk, or the work involved is inherently dangerous, such as blasting. Albain v. Flower Hospital (1990), 50 Ohio St.3d 251, 261, citing Restatement of the Law 2d, Torts, Section 416, Comment a, and Section 427.
In Boh me, Inc. v. Sprint Internatl. Communications Corp. (1996),115 Ohio App.3d 723, this court explained that inherently dangerous work involves work which, although not highly dangerous, involves a risk recognizable in advance that danger inherent in the work itself, or in the ordinary or prescribed way of doing it, may cause harm to others. Id. at 736, quoting Restatement of the Law 2d, Torts, (1965), Section 427, comment c. Comment b to Section 427 further clarifies what is meant by inherently dangerous work:
 The rule stated in this Section is commonly expressed by the courts in terms of liability of the employer for negligence of the contractor in doing work which is inherently or intrinsically dangerous. It is not, however, necessary to the employer's liability that the work be of a kind which cannot be done without a risk of harm to others, or that it be of a kind which involves a high degree of risk of such harm, or that the risk be one of very serious harm, such as death or serious bodily injury. It is not necessary that the work call for any special skill or care in doing it. It is sufficient that work of any kind involves a risk, recognizable in advance, of physical harm to others inherent in the work itself, or normally to be expected in the ordinary course of the usual or prescribed way of doing it, or that the employer has special reason to contemplate such a risk under the particular circumstances under which the work is to be done. (Emphasis added).
Here, appellants presented no evidence that the work involved in tearing down appellee's garage was of a kind which cannot be done without an inherent risk of harm to others, that harm would be expected in the ordinary course of removing the garage or that there were particular circumstances under which the work was to be done that would cause appellee to contemplate such a risk.
Appellants argue, however, that this case is virtually indistinguishable from Covington Cincinnati Bridge Co., supra, in which the Ohio Supreme Court found that the demolition of a five-story warehouse partially destroyed by fire and abutting an alleyway was an inherently dangerous activity.
We do not find this case similar to Covington, however. Appellee's garage was a single-story garage with walls only eight feet high, not a five-story warehouse. Moreover, it was located in appellee's backyard; away from any public road, alley or accessway. Unlike Covington, where the public used the alleyway next to the warehouse and was likely to be in the vicinity when the warehouse was demolished, there was no evidence that anyone, including appellant, was likely to be near appellee's garage when the garage was torn down. Thus, there was no recognizable risk of inherent danger in the work itself or in the ordinary way of performing it. In other words, appellee had no reason to believe that the work, if done properly, would cause injury to anyone. Accordingly, the removal of appellee's garage was not an inherently dangerous activity to which a non-delegable duty attaches.
Appellants argue, however, that the question of whether an activity is inherently dangerous is a question for the trier of fact, rather than a question of law, and, therefore, the trial court erred in granting appellee's motion for summary judgment. In analyzing this issue in Bohme, supra, this court referred to the Ohio Supreme Court decision in Warden v. Pennsylvania Rd. Co. (1931), 123 Ohio St. 304, where the Railroad and its contractor were held jointly liable on a jury verdict to a motorcycle policeman who struck a plank protruding from a temporary trestle over a public street. The trial court declined to rule on whether the trestle work was inherently dangerous and submitted the issue to the jury. Our Court of Appeals reversed, but was overruled on appeal. The Supreme Court found no error in the trial court's procedure and stated:
 The question of responsibility of an owner for the negligence of an independent contractor may be one of law, or of fact, or of mixed law and fact, depending upon the circumstances of the particular case. The court of common pleas proceeded upon the theory that it was a question of mixed law and fact, and left the liability of the owner to the determination of the jury, in harmony with the case of Covington Cincinnati Bridge Co. v. Steinbrock Patrick, 61 Ohio St. 215. The Court of Appeals reversed the judgment against the railroad company, holding that it was not guilty of any negligence. The reversal by the Court of Appeals was evidently upon the theory that there was nothing inherently dangerous in the work, and that the contractor was in full charge of its details.
 The circumstances surrounding the execution of a contract by an independent contractor might be such that it could properly be stated that, as a matter of law, there would be no liability on the part of the owner. On the other hand, the circumstances might be such as to make it very clear that the owner would carry a legal responsibility for the negligence of the contractor, to be determined by the court without submission to the jury.
 Between these two extremes, the circumstances may be so complicated that minds might easily differ as to the danger attendant upon the execution of the work, resulting in different conclusions as to the duty of the owner to exercise care to avoid injury to third persons.
 The case at bar is in the twilight zone between the two extremes, and this fact is demonstrated by the disagreement between the trial court and the Court of Appeals. * * * We are of the opinion, therefore, that the trial court did not err in submitting this question to the jury under proper instructions, and that the Court of Appeals erred in reversing the judgment upon that ground.
Warden, 123 Ohio St. at 307-309.
This case, however, is not in the twilight zone between the two extremes. It is readily apparent that the work entailed in tearing down appellee's single-story garage was not inherently dangerous. Therefore, appellee's liability was a question of law properly determined by the trial court.
Appellants also assert that appellee is vicariously liable for Darling's negligence under a theory of negligent hiring because he failed to determine whether Darling had sufficient competence to carefully and safely demolish a garage. Appellee admitted that he hired Darling on the basis of an unsolicited telephone call from Darling, without any inquiry as to Darling's experience, reputation or level of competence. He also admitted that he did not check or ask Darling for references nor did he ascertain whether Darling had obtained the requisite permit for removal of a structure. Appellants contend that reasonable minds could conclude from these facts that appellee breached his duty to hire a competent and careful contractor and, therefore, the trial court erred in granting appellee's motion for summary judgment.
It is well established that an employer must exercise reasonable care in the selection of a competent and careful independent contractor. Albain, supra at 257, citing Restatement of the Law 2d, Torts, Section 411. As this court stated in Stephens v. A-Able Rents Co. (1995),101 Ohio App.3d 20, the primary issue in a negligent hiring case is whether the employer knew or should have known of the employee's * * * tortious propensities. * * * The relevant inquiry is whether facts existed that the employer should have known about, which facts would have prevented the employment relationship.[2]
Appellants contend that if appellee had conducted even a cursory background check on Darling, he would have discovered that Darling was neither qualified as a contractor nor competent to perform demolition work. Further, appellants contend that if appellee had applied to the City of Parma for a demolition permit — something he was required to do — he never would have hired Darling because the city would not have issued a permit to Darling, who was not licensed with the city as a contractor.
There is no evidence, however, to support appellants' argument. Appellants' assertion that appellee would not have hired Darling if he had known he was not licensed is merely speculation; there is no testimony from appellee to this effect. There are no facts in the record that demonstrate that a pre-contracting investigation by appellee would have prevented appellants' injuries or that Darling had a history of criminal or tortious conduct about which appellee should have known. Accordingly, the trial court did not err in dismissing appellants' negligent hiring claim.
Finally, appellants assert that the trial court erred in granting appellee's motion for summary judgment because appellee is liable under a theory of nuisance. Appellants contend that after Darling and his crew removed the roof from appellee's garage, the garage wall immediately abutting appellants' property became extremely hazardous because it lacked support and could have fallen at any time on appellants' property. Accordingly, appellants contend, this dangerous condition was an absolute nuisance which caused injury for which appellee is strictly liable. We disagree.
The leading case in Ohio on the law of nuisance is Taylor v. City of Cincinnati (1944), 143 Ohio St. 426. In Taylor, the Supreme Court of Ohio defined an absolute nuisance (i.e., an action to which strict liability is applied) as a distinct civil wrong, arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another * * *. Id. at 440.
Ohio case law has stated that the test as to the amount of unreasonable interference necessary to constitute a nuisance is measured by the degree of discomfort that a person of ordinary sensibilities would experience. See, e.g., O'Neil v. Atwell (1991), 73 Ohio App.3d 631; Adams v. Snouffer (1949), 88 Ohio App. 79, 82; Kepler v. Indus. Disposal Co. (1948),84 Ohio App. 80, 82. In essence, the trial court must look at what persons of ordinary tastes and sensibilities would regard as an inconvenience or interference materially affecting their physical comfort to a degree which would constitute a nuisance. O'Neil, supra.
Here, we cannot conclude that an eight-foot high garage in the process of being taken down is an absolute nuisance to which strict liability attaches. Darling and his crew began removal of the garage on July 21, 1996; they returned only two days later to complete the removal. Persons of ordinary taste and sensibilities would not regard a two-day delay in the removal of a garage as an inconvenience that materially affects the use, enjoyment or possession of their property. Accordingly, under these circumstances, the trial court did not err in determining that there was no genuine issue of material fact regarding whether the garage was an absolute nuisance.
Appellants contend, however, that even if appellee is not liable under a theory of absolute nuisance, he is liable under a theory of qualified nuisance because he allowed a partially demolished structure to exist on his property.
A civil action based upon the maintenance of a qualified nuisance is essentially an action in tort for the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm, ultimately resulting in injury. The dangerous condition constitutes the nuisance. The action for damages is predicated upon carelessly or negligently allowing such condition to exist. Allen Freight Lines, Inc. v. Consol. Rail Corp.(1992), 64 Ohio St.3d 274, 275, quoting Rothfuss v. Hamilton Masonic Temple Co. (1973), 34 Ohio St.2d 176, 180. In such case, of course, negligence must be averred and proven to warrant a recovery. Id. at 276, quoting Taylor v. Cincinnati (1944),143 Ohio St. 426, 441. The allegations of nuisance and negligence therefore merge, as the nuisance claims rely upon a finding of negligence. Id.
Here, as a matter of law, there was no negligence, and therefore no qualified nuisance, because appellee had no duty to insure that the demolition of the garage proceeded in a safe manner or that the condition of the garage during its demolition was safe. As discussed earlier at page six of this opinion, an employer is not liable for the acts of an independent contractor unless the employer has negligently hired the independent contractor, the duty delegated to the independent contractor is a non-delegable duty or the independent contractor has induced a third party to rely upon an ostensible agency between the independent contractor and the employer. None of those exceptions apply in this case. The duty to insure that the demolition of appellee's garage was completed safely and without injury, therefore, was Preston Darling's, not appellee's. Because he had no duty to appellants, there was no negligence and, accordingly, no qualified nuisance. Therefore, the trial court properly granted appellee's motion for summary judgment regarding appellants' nuisance claim.
Appellants' first assignment of error is overruled.
In their second assignment of error, appellants assert that the trial court erred in denying their motion to compel the deposition of Preston Darling. Appellants contend that they were entitled to take Darling's deposition because appellee's motion for summary judgment was pending and a plaintiff is entitled to have all discovery completed before responding to a summary judgment motion. Further, appellants contend that Civ.R. 37(A) permits a party to obtain an order compelling an opposing party to appear for deposition and where a defendant fails to appear at his deposition without first seeking a protective order, as in this case, the party seeking the deposition is entitled to an order compelling discovery.
The standard of review governing discovery rulings is abuse of discretion. Tracy v. Merrell Dow Pharmaceuticals (1991), 58 Ohio St.3d 147,152. To constitute an abuse of discretion, the trial court's ruling:
 must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead of passion or bias.
Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256; Tracy, supra at 152. The record does not support such a finding in this case.
The record demonstrates that appellants — not the court — were responsible for their inability to take Darling's deposition. The record reflects that appellants did not respect the trial court's discovery deadline. At a pretrial conference on September 1, 1998, the trial court ordered that discovery was to be completed by October 30, 1998 and dispositive motions were to be filed by November 30, 1998.
Although appellee timely filed his motion for summary judgment, appellants did not notice Darling's deposition until January 14, 1999, nor did they file their motion to compel until February 22, 1999, well after the court-ordered discovery cut-off date and well after their response to appellee's motion was due.
It is noteworthy that appellants did not request any additional time for discovery, as required by Civ.R. 56(F), during the pendency of appellee's motion. Rather, appellants filed their brief in opposition to appellee's motion on January 8, 1999. Nowhere in their response to appellee's motion did appellants assert that they needed additional time to conduct discovery in order to respond to appellee's motion. Instead, appellants elected to litigate the case on the merits. This court and others have repeatedly held that claims of error concerning discovery are waived and lack merit under such circumstances. See, e.g., BFI Waste Sys. of Ohio v. Garfield Hts. (1994), 94 Ohio App.3d 62, 73-75; Lillback v. Metro Life Ins. Co. (1994), 94 Ohio App.3d 100, 102-104; R R Plastics, Inc. v. F.E. Myers Co. (1993), 92 Ohio App.3d 789, 797-798.
A judgment preventing the requesting party from pursuing discovery will not be reversed unless the ruling causes substantial prejudice. Shaver v. Standard Oil Co. (1990), 68 Ohio App.3d 783, 800. Under these circumstances, where appellants did not request a continuance pursuant to Civ.R. 56(F) and filed their motion to compel well after the discovery deadline, the trial court did not abuse its discretion by enforcing its long-established discovery deadline and denying appellants' motion.
Appellants' second assignment of error is overruled.
It is ordered that appellee Walter J. Koba III recover of appellants his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J. and MICHAEL J. CORRIGAN, J., CONCUR.
[1] The trial court granted a default judgment against Darling Sunoco in appellants' initial lawsuit and, thus, denied as moot appellants' motion for default judgment against Darling Sunoco in the refiled case.
[2] Thus, appellee's assertion that an independent contractor relationship is not a sufficient basis for a negligent hiring claim is without merit.