DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} Plaintiff Virginia Manning allegedly tripped and fell over a small gray pipe protruding from a sidewalk near her home. She sued the City of Avon Lake for her injuries, but the trial court granted the City's Motion for Summary Judgment without opinion. This Court reverses, concluding that genuine issues of material fact exist regarding whether the City breached its duty to inspect, maintain, and repair its sidewalks and water system, whether the dangerous condition was open and obvious, whether the City was immune from liability, and whether the City had constructive knowledge of the danger. *Page 2 
 FACTS {¶ 2} As Mrs. Manning walked along a public sidewalk several houses down from her residence on the afternoon of October 30, 2002, she allegedly tripped and fell over a device called a curb stop. A curb stop is a small-diameter iron telescoping pipe that extends into the ground and allows access to a shutoff valve on an underground water pipe. Curb stops normally have a three to four inch black or rust-colored lid screwed onto them, but the one Mrs. Manning encountered allegedly did not. When the houses along Mrs. Manning's street were built in the 1940s, a curb stop was installed in front of each of them. When the sidewalk was built years later, holes were left in it to allow access to the curb stops. The sidewalk was designed so the curb stops would align flush with it.
 {¶ 3} Although Mrs. Manning had lived on her street for more than fifty years and was aware of the existence of the curb stops, she did not see this curb stop before tripping over it. A passing motorist saw Mrs. Manning lying on the sidewalk and stopped to help her. Mrs. Manning told the motorist that she had tripped over a small gray pipe that was sticking out of the sidewalk. The motorist inspected the area and found the curb stop, noticing that it was similar in color to the sidewalk, that it was sharp, and that it stuck out of the ground more than two inches.
 {¶ 4} According to city employees, curb stops can rise up when winter frost causes the ground to push the entire sidewalk upward. When the sidewalk *Page 3 
subsides after the spring thaw, the curb stops sometimes stay elevated. The City has never inspected its sidewalks for protruding curb stops, but will fix one if a resident reports it. Because of their telescoping design, it is easy to return a curb stop to the correct height by either stepping on it or hammering it down. The curb stops are no longer necessary because the water supply to a house can now be turned off at the house's water meter vault. The City, therefore, usually pours concrete over any curb stops that are likely to cause recurring problems.
 {¶ 5} After Mrs. Manning's fall, the City was notified about the protruding curb stop. A city employee went out to the site that same day and pounded the curb stop down with a sledgehammer. He did the same thing to a few others on her street. The next day, Mrs. Manning's daughter went to the scene to take photographs of the curb stop. Later that day, city employees covered it with concrete.
 STANDARD OF REVIEW {¶ 6} Mrs. Manning has assigned four errors. They all are arguments that the trial court incorrectly granted the City summary judgment. In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co., 66 Ohio App. 3d 826, 829
(1990). *Page 4 
 DUTY TO INSPECT, MAINTAIN, AND REPAIR {¶ 7} Mrs. Manning's first assignment of error is that the trial court erred when it granted the City summary judgment because there were genuine issues of material fact regarding whether the City breached its duty to inspect and maintain its sidewalks and its duty to repair its water system. At the time of Mrs. Manning's fall, Section 723.01 of the Ohio Revised Code imposed a duty on cities to inspect and maintain their sidewalks:
 Municipal corporations shall have special power to regulate the use of the streets. . . . [T]he legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, [and] sidewalks, . . . within the municipal corporation, and . . . shall cause them to be kept open, in repair, and free from nuisance.
See Ruwe v. Bd. of Twp. Trs. of Springfield Twp., 29 Ohio St. 3d 59, 60
(1987) (noting Section 723.01 "places an obligation on municipalities to keep highways and streets open for the purpose for which they are designed; that is, to afford the public a safe means of travel.") In addition, Section 2744.02(B)(3) provided that "political subdivisions are liable for injury . . . caused by their failure to keep public roads, highways, streets, [and] sidewalks . . . within the political subdivisions open, in repair, and free from nuisance. . . ."* *Page 5 
 {¶ 8} With respect to city water systems, Section 2744.02(B)(2) provided that "political subdivisions are liable for injury . . . caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Section2744.01(G)(2)(c) clarified that the "establishment, maintenance, and operation" of a municipal corporation water supply system was a proprietary function. See Hill v. Urbana, 79 Ohio St. 3d 130, 134
(1997).
 {¶ 9} With respect to the City's duty to maintain, Mrs. Manning has alleged that the City failed to keep its sidewalk free from nuisance. Because she has only alleged that the City was negligent, any nuisance, if one existed, was a qualified nuisance. Kimball v. City ofCincinnati, 160 Ohio St. 370, 371-72 (1953). A qualified nuisance "is essentially a tort of negligent maintenance of a condition that creates an unreasonable risk of harm, ultimately resulting in injury." State exrel. R.T.G. Inc. v. State, 98 Ohio St. 3d 1, 13 (2002). The standard of care is the "care a prudent man would exercise in preventing potentially or unreasonably dangerous conditions to exist." Rothfuss v. HamiltonMasonic Temple Co., 34 Ohio St. 2d 176, 180 (1973).
 {¶ 10} Mrs. Manning has also alleged that the City failed to reasonably inspect its sidewalks. A city has a duty to use reasonable care in inspecting its sidewalks. Albers v. City of Cincinnati,111 Ohio App. 295, 298 (1960). This duty requires that the inspections be repeated at reasonable intervals. Id. *Page 6 
 {¶ 11} According to Mrs. Manning, she was walking along a public sidewalk when she tripped over a curb stop that was protruding vertically out of the sidewalk more than two inches, missing its cap, and similar in color to the sidewalk. The City knew its curb stops sometimes protruded out of the ground following the spring, but had never inspected its sidewalks for this problem. Because Mrs. Manning's injury occurred in October, it is likely that the curb stop had been protruding from the sidewalk for several months. A city employee verified that the curb stop was sticking out of the sidewalk and found other curb stops in Mrs. Manning's area that were also raised.
 {¶ 12} Viewing the evidence in a light most favorable to Mrs. Manning, genuine issues of material fact exist regarding whether the City breached its duty to inspect the sidewalk and its duty to maintain the sidewalk in a safe condition. Genuine issues of material fact also exist regarding whether the City breached its duty to repair its water system. The City, therefore, was not entitled to judgment on this issue as a matter of law. Mrs. Manning's first assignment of error is sustained.
 OPEN AND OBVIOUS CONDITION {¶ 13} Mrs. Manning's second assignment of error is that there were genuine issues of material fact regarding whether the protruding curb stop was an open and obvious condition. "Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." Armstrong v. Best *Page 7 Buy Co. Inc., 99 Ohio St. 3d 79, 2003-Ohio-2573, syllabus. "[T]he open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." Id. at ¶ 5.
 {¶ 14} The open and obvious doctrine is a common law doctrine that concerns whether a duty exists. Id.; Robinson v. Bates,160 Ohio App. 3d 668, 2005-Ohio-1879, at ¶ 15. Ordinarily, it does not relieve a statutory duty to repair. Robinson v. Bates, 112 Ohio St. 3d 17,2006-Ohio-6362, at ¶ 25. At the time of Mrs. Manning's injury, however, Section 2744.03(A)(7) of the Ohio Revised Code provided that a political subdivision could assert any defense or immunity that was available under the Code or at common law. Accordingly, this Court has concluded that cities may assert the open and obvious doctrine in tort cases when the plaintiff fell on a public sidewalk. See Jenks v. City ofBarberton, 9th Dist. No. 22300, 2005-Ohio-995, at ¶ 12; see alsoCity of Norwalk v. Tuttle, 73 Ohio St. 242, paragraph two of the syllabus (1906) (holding that "[o]ne who voluntarily goes upon a sidewalk of a city that is obviously, and known by [her] to be, in a dangerous condition, cannot recover" for her injuries).
 {¶ 15} Open and obvious dangers are not hidden, are not concealed from view, and are discoverable upon ordinary inspection. Kirksey v. SummitCty. Parking Garage, 9th Dist. No. 22755, 2005-Ohio-6742, at ¶ 11. No duty exists if the plaintiff did not notice the condition until after she fell, but could have seen it *Page 8 
if she had looked. Id. "The determinative issue is whether the condition [was] observable." Id.
 {¶ 16} Mrs. Manning testified at her deposition that she was aware of dark brown circular objects in front of her house and that she assumed they were utility-related. She stated that the object she tripped over, however, was a pipe that blended in with the color of the sidewalk. Although her injury occurred only a few houses from where she lived, Mrs. Manning testified that she did not have friends that lived in that direction and that she rarely walked on that stretch of the sidewalk. The motorist who stopped to help Mrs. Manning said that the curb stop she saw was similar in color to the sidewalk, that the sidewalk was littered with leaves, and that the curb stop was very difficult to see. The city employee who fixed the curb stop where Mrs. Manning tripped testified at his deposition that, although there is a special key for removing curb stop lids, someone who was pretty handy with a screwdriver could probably remove one. The employee also testified that a lawn mower could break a curb stop lid off, leaving just the pipe.
 {¶ 17} This Court concludes genuine issues of material fact exist regarding whether the protruding curb stop was an open and obvious condition. Factual questions exist regarding the height of the pipe, its color, and whether it had a circular lid on it. Each of these factors weigh on whether the curb stop was observable. This Court notes that, although "[a] pedestrian is required to use [her] senses to avoid injury while walking on a sidewalk," she is not required to "keep *Page 9 
[her] eyes upon the sidewalk at all times." Griffin v. City ofCincinnati, 162 Ohio St. 232, 238 (1954). Accordingly, the City is not entitled to judgment on this issue as a matter of law.
 {¶ 18} The dissent apparently reads this Court's opinion in Jenks v.City of Barberton, 9th Dist. No. 22300, 2005-Ohio-995, as meaning that every hazard on a sidewalk is open and obvious as a matter of law. This, however, is a misreading of that opinion. The Court's conclusion inJenks was based on the evidence and arguments before it in that case. The evidence in this case presents a genuine issue of fact regarding whether the curb stop on which Mrs. Manning tripped was an open and obvious hazard. Mrs. Manning's second assignment of error is sustained.
 STAUTORY IMMUNITY {¶ 19} Mrs. Manning's third assignment of error is that the City is not immune from liability as a matter of statutory law. At the time of Mrs. Manning's injury, Section 2744.02(A)(1) of the Ohio Revised Code provided that, unless there is an exception in subsection (B), a political subdivision is not liable for an injury caused by any act or omission. As noted earlier, however, Section 2744.02(B)(2) provided that cities were liable for the negligent performance of acts by their employees with respect to proprietary functions and Section2744.02(B)(3) provided that cities were liable for their failure to keep sidewalks open and free from nuisance. "[T]he `establishment, maintenance, and operation' *Page 10 
of a municipal corporation water supply system . . . is a proprietary function of a political subdivision." Hill v. Urbana,79 Ohio St. 3d 130, 134 (1997).
 {¶ 20} Even if a city is liable under Section 2744.02(B), its immunity can be restored under Section 2744.03(A). Section 2744.03(A)(3) restores immunity to a city if its employee's action or failure to act "was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee." Section2744.03(A)(5) restores immunity "if the injury . . . resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 21} In Giebner v. Summit County, a woman sued the county after she tripped over a water valve box, alleging it had been negligently installed and maintained. 9th Dist. No. 20756, 2002 WL 388908 at *1 (Mar. 13, 2002). The county argued that its decision not to inspect or otherwise maintain the box was an exercise of discretion regarding how to use county personnel, equipment, or facilities. Id. at *3. It presented testimony that inspections were unnecessary "because, under normal conditions, such boxes require no maintenance." Id. This Court agreed, noting that the county's decision did "not involve a decision as to whether to repair a box known to be in need of service, but rather, involve[d] the *Page 11 
County's high level policy decision not to dedicate personnel and resources to routinely inspecting boxes, which, under normal conditions, do not require maintenance." Id.
 {¶ 22} This case is distinguishable from Giebner because, although a city employee testified that the curb stops do not require maintenance, another testified that curb stops sometimes protrude from sidewalks after the spring thaw, that he usually has employees under his supervision fix them, and that he had fixed at least ten himself over the years. A genuine issue of material fact therefore exists regarding whether the curb stops require maintenance. Furthermore, a city "cannot simply assert that all of its decisions are discretionary in order to obtain protection under Sections 2744.03(A)(3) and (5)." Hacker v.Cincinnati, 130 Ohio App. 3d 764, 770 (1998). "If a plaintiff s injuries stem from [a city's] negligent maintenance or operation of a structure under its control, then [it] will not be immune from liability. . . ."Id.; see Franks v. Lopez, 69 Ohio St. 3d 345, 349 (1994) (stating that if physical impediments are easily discoverable, their elimination involves no discretion, policy-making, or engineering judgment and that a political subdivision will not be immune for its failure to abate them); Hall v. Ft. Frye Loc. School Dist. Bd. of Educ,111 Ohio App. 3d 690, 702 (1996) (concluding that "the maintenance of a political subdivision's property, as opposed to decisions concerning the acquisition and utilization of such property, do not involve a sufficient amount of budgeting, management, or planning to bring such *Page 12 
decisions into the purview of R.C. 2744.03(A)(3) or (5)"). This Court, therefore, concludes that the City has failed to establish it is immune from liability under Section 2744.03(A)(3) or Section 2744.03(A)(5) as a matter of law. Mrs. Manning's third assignment of error is sustained.
 ACTUAL OR CONSTRCTIVE NOTICE {¶ 23} Mrs. Manning's fourth assignment of error is that there were genuine issues of material fact regarding whether the City was on actual or constructive notice of the elevated curb stop. A city "must have had `either actual or constructive knowledge of [a] nuisance' before liability can be imposed." Harp v. Cleveland Hts., 87 Ohio St. 3d 506,512 (2000) (quoting Franks v. Lopez, 69 Ohio St. 3d 345, 349 (1994)).
 {¶ 24} Constructive knowledge exists if a nuisance "existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger." Id. If a pedestrian falls on a city sidewalk, it is for the jury to determine "whether the condition complained of had existed for such a period of time and under such circumstances that a reasonably prudent person, having charge of such matters for the city, in the exercise of ordinary care would have known of such condition."Griffin v. City of Cincinnati, 162 Ohio St. 232, 238-39 (1954). *Page 13 
 {¶ 25} Mrs. Manning has argued that the City had actual notice of the protruding curb stop because it did not have a lid on it and city employees testified that only they have the appropriate keys to remove curb stop lids. She has also argued that the City had constructive notice of the danger because city employees testified that the curb stop had probably been protruding since the spring, sufficient time for the City to have discovered it upon reasonable inspection.
 {¶ 26} For the reasons stated by Mrs. Manning, this Court concludes that genuine issues of material fact exist with respect to whether the City had actual or constructive notice of the protruding curb stop. Accordingly, the City was not entitled to judgment on this issue as a matter of law. Mrs. Manning's fourth assignment of error is sustained.
 CONCLUSION {¶ 27} Genuine issues of material fact exist regarding whether the City breached its duty to inspect, maintain, and repair its sidewalks and water system, whether the curb stop Mrs. Manning tripped over was an open and obvious condition, whether the City was entitled to statutory immunity, and whether the City was on actual or constructive notice of the condition. Mrs. Manning's assignments of error are therefore sustained. The judgment of the Lorain County Court of Common Pleas is reversed and the cause is remanded. Judgment reversed, and cause remanded. *Page 14 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellee.
* This Court applies the law that was in effect at the time of Mrs. Manning's fall. Hubbard v. Canton City School Bd. of Educ.,97 Ohio St. 3d 454, 2002-Ohio-6718, at ¶ 17. Section 723.01 now provides that a city's liability under that section is determined under Section 2744.02. Section 2744.02(B)(3) has also been amended and no longer contains language expressly regarding sidewalks.